BAXTER, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, December 15, 1903.

1. **PRACTICE**: Evidence: Prima Facie Case: Compulsory Nonsuit. In considering plaintiff's evidence with a view to ascertaining whether or not he made out a prima facie case entitling him to go to the jury, the testimony offered in his behalf should be taken as true and every reasonable inference therefrom in favor of the plaintiff should be drawn.

2. **STREET RAILWAYS**: Negligence: Prima Facie Case: Last Chance. Where the evidence of plaintiff tends to show that his minor son was on an ice wagon driven by another, with the duty of delivering ice from the wagon, that the wagon was going along within a foot and a half of the street car track, with an opening in the rear end by which the track to the

Baxter v. St. Louis Transit Co.

rear could be seen, that a car approached from the rear at a rapid rate of speed, without giving any warning of its approach, overtook the wagon, struck the hub of the wheel, knocked plaintiff's son out and produced the injuries for which suit is brought, this makes out a case for the jury; and, although the boy and the driver were guilty of negligence in failing to look for a car, if the motorman in charge of the car, by the exercise of ordinary diligence, could have seen their exposure in time to have avoided the accident, then his negligence in not stopping the car, or sounding the bell, was the proximate cause of the injury; the last chance doctrine applies.

3. **CONTRIBUTORY NEGLIGENCE: Imputing Negligence: Joint Employment.** The negligence of the driver of a vehicle can not be imputed to a party injured while riding with him, unless the driver is in some manner controlled by the person injured; negligence is not imputable on the theory of joint venture, unless the relation of the parties injured in the accident is such that the negligent one might have been controlled, or at least influenced, by the other.

4. ———: ———: ———. The negligence of the driver of an ice wagon cannot be imputed to the boy who rides on the wagon to deliver the ice and is injured by a collision of the wagon with a street car.

5. **NEGLIGENCE: Injuries: Parent and Child: Measure of Damages.** Where a father sues for injuries to his minor son, it is proper to instruct the jury that the measure of damages is a reasonable compensation, first, for medical attendance, etc.; second, for reasonable worth of nursing by plaintiff and his wife; third, whatever loss of service there might be from the time of the injury until the son should arrive at the age of twenty-one years of age.

6. ———: ———: ———: ———: **Excessive Verdict.** In such an action, where it was shown that the son was twelve years of age when hurt, that there was a compound fracture of his thigh bone, that he was in the hospital twenty-four weeks, and under the care of a surgeon a longer time than that, that the leg was never entirely healed, that the injured leg was two and one-half inches shorter than the other, and bowed out above the knee, that the foot turned inward and hung in front of the other foot, that plaintiff had paid out $500 for treatment, a verdict for $2,000 was not excessive.

Appeal from St. Louis City Circuit Court.—*Hon. D. G. Taylor,* Judge.

AFFIRMED.

*Boyle, Priest & Lehmann,* and *George W. Easley* for appellant.

(1) The demurrer to the evidence should have been sustained. It is undisputed that had the plaintiff's son, or his fellow-servant Davis, looked or listened, they could have seen and heard the approaching car and avoided the injury. Moore v. Railway, 75 S. W. 676; Moss v. Traction Co. (S. C. Pa.), 1 Am. Neg. Rep. 520. (2) The fact that plaintiff's son testified that he looked and saw no car, in the face of the undisputed physical facts of the case, has no probative force, and must be disregarded by the court. Hook v. Railway, 162 Mo. 581; Kelsey v. Railroad, 129 Mo. 362; Hayden v. Railroad, 124 Mo. 573; Payne v. Railroad, 136 Mo. 575; Baker v. Railroad, 122 Mo. 589; Gurley v. Railroad, 104 Mo. 211-233; Hickman v. Railroad, 47 Mo. App. 65-73; Weaver v. Railroad, 60 Mo. App. 210; Lien v. Railway, 79 Mo. App. 480; Railway v. Smith, 86 Fed. 296; Railway v. Pounds, 82 Fed. 217. (3) The first instruction given for plaintiff submits the question to the jury of whether the plaintiff was guilty of contributory negligence. The fact being undisputed that the plaintiff did not look or listen for the approaching car, and there was no obstacle to prevent him seeing or hearing it, there was no question of fact to be submitted to the jury. It was a question of law to be decided by the court. The second instruction given for plaintiff contains the same error. Murray v. St. Louis Transit Co., 75 S. W. 611; Zimmerman v. Railroad, 71 Mo. 476. (4) The second instruction given for plaintiff is erroneous. It allows the plaintiff to recover, notwithstanding the concurring negligence of the plaintiff's son. Upon the whole evidence, both parties were negligent, and the negligence of neither without the negligence of the other would have caused the injury. In such a case there can be no recovery. Zumwalt v. Railway, 74 S. W. 1021; Hornstein v. St. Louis Transit Co., 70 S. W. 1105; Bailey's

Master's Liability, 446; Cooley on Torts (2 Ed.), 812; 7 Am. and Eng. Ency. of Law (2 Ed.), 386; Murphy v. Railway, 163 Mo. 262; Watson v. Railway, 133 Mo. 250-1; Payne v. Railway, 129 Mo. 419. (5) The plaintiff's son, "was sitting upon the seat with the driver, with the same knowledge of the road, the crossing and the environments and with at least the same, if not better, opportunity of discovering the danger, as the driver possessed, and without any embarrassment in communicating the same to him," and the plaintiff's son had "no right to omit reasonable and prudent effort to see" for himself that the way was clear. He "was bound to look and listen." Brickell v. Railroad, 120 N. Y. 290, 24 N. E. 450; Miller v. Railway (Ind.), 27 N. E. 359. Almost this identical case has been passed upon by the Court of Appeals of New York, and the person riding with the driver denied any right to recover. Donnelly v. Railway, 109 N. Y. 16, 15 N. E. 733; Griffith v Railway, 44 Fed Rep. 574; 1 Shear. & Redf. on Neg. (5 Ed.), sec. 66a, note 1; Stafford v. Oskaloosa, 57 Ia. 749; Miner v. Railroad, 153 Mass. 398; Shear. & Redf. on Neg. (5 Ed.), sec. 65. (6) The fourth instruction given for plaintiff was erroneous. It allows the plaintiff to recover for the effects of the second fracture of the son's leg. There was no causal connection between the first and the second injury. The second fracture of the leg was not the natural, proximate result of the negligence charged against the defendant. Without such causal, proximate and natural result there can be no recovery. Cooley on Torts (2 Ed.), p. 74; Daugherty v. Railroad, 19 Mo. App. 418; Headley v. Transf. Co., 115 Mass. 308; Kincaid v. Railroad, 62 Mo. App. 371; Lynn Gas. Co. v. Ins. Co., 158 Mass. 570, 20 L. R. A. 297; 33 N. E. 691; Brown v. Railroad, 20 Mo. App. 222; Railroad v. Johnson, 92 Ala. 204; 8 Am. Neg., Cas. 13; Haley v. Railway, 21 Ia. 15; 8 Am. Neg. Cas. 236; Railroad v. Rose, 11 Neb. 177; 8 Am. Neg. Cas. 492; Railroad v. Spirk, 70 N. W. 926; 2 Am. Neg. Rep. 400; Had-

ley v. Boxendale, 9 Exch. 341; 2 Am. Neg. Rep. 400; Pullman Car Co. v. Barker, 4 Colo. 344; 9 Am. Neg. Cas., 131; Hobbs v. Railroad, 10 L. R. Q. B. 111; Sheffer v. Railroad, 105 U. S. 252; Siekinger v. Mfg. Co., 129 Mo. 590; 1 Chitty on Plead., 388; Butler v. Kent, 19 Johns. 228. (7) When the injured party has the right to control the conduct of the party whose negligence caused or contributed to his injury, the "identification" was complete and the negligence imputed. Becke v. Railroad, 102 Mo. 550; Dickson v. Railroad, 104 Mo. 504; O'Rourke v. Railway, 142 Mo. 352; Borough of Carlisle v. Brisbane, 113 Pa. St. 552; 1 Thompson on Negligence (2 Ed.), sec. 502, note 22; 2 Thompson on Negligence (2 Ed.), sec. 1621. The following cases were decided in the absence of evidence showing that plaintiff had any control over the driver, against the imputability of the negligence. Little v. Hackett, 116 U. S. 366; Follman v. City of Mankato, 29 N. W. 317 (Minn.); Robinson v. Railroad, 66 N. Y. 11 (23 Am. Rep. 1); 1 Shearman and Redfield on Negligence (2 Ed.), sec. 66a; Smith v. Railroad, 32 Atl. 967; Railroad v. McLeod, 29 South (Miss). 76; Brannen v. Railroad, 115 Ind. 115 (17 N. E. 202); Meenagh v. Buckmaster, 50 N. Y. S. 85; Bush v. Railroad, 62 Kan. 709 (64 Pac. 624); Dean v. Railroad, 18 Atl. (Pa.) 718; Township of Crescent v. Anderson, 8 Atl. (Pa.) 381; Hoag v. Railroad, 111 N. Y. 199 (18 N. E. 648); Roach v. Railroad, 21 S. E. (Ga.) 67; Koehler v. Railroad, 44 Fed. 574; Aurelius v. Railroad, 49 N. E. (Ind.) 857; Slater v. Railroad, 32 N. W. (Ia.) 264; Miller v. Railroad, 27 N. E. (Ind.) 339; Railroad v. Boyts, 45 N. E. (Ind.) 812; Brickell v. Railroad, 24 N. E. (N. Y.) 449.

*James M. Sutherland* for respondent.

(1) The cases cited in defendant's brief in support of his first point declare the law of this State, viz.: That stepping directly in front of an approaching train

is such gross carelessness as to preclude a recovery. The facts and circumstances of this case however preclude the application of those cases. Klockenbrink v. Railway, 81 Mo. App. 351; McAndrews v. Railway, 83 Mo. App. 233; O'Keefe v. Railway, 81 Mo. App. 386; Cooney v. Southern Electric, 80 Mo. App. 226; Morgan v. Railway, 159 Mo. 262; McAndrews v. Railway, 98 Mo. App. 97; Hutchinson v. Railway, 88 Mo. App. 376; Edwards v. Railway, 94 Mo. App. 91; Meyers v. Transit Co., by St. Louis Court of Appeals, 73 S. W. 379. (2) In other criticisms under No. 4 where counsel contend that any negligence on the part of the driver was imputable to plaintiff's son, does not appear to receive judicial support. The law on this question has long since been settled in this jurisdiction, hence the foreign cases cited by counsel may make interesting and useful reading, but can not go the length of undermining established law, more especially when a change would work no improvement. Dickson v. Railway, 104 Mo. 491; Becke v. Railroad, 102 Mo. 544; Land Co. v. Mingea, 89 Ala. 521; Borough of Carlisle v. Brishbane, 113 Pa. St. 552; Mills v. Armstrong, L. R. 13, App. case 1; Thorogood v. Bryan, 65 Eng. C. L. Rep., 8 M. G. & S. 114; Hunt v. Railroad, 14 Mo. App. 160; Keitel v. Railroad, 28 Mo. App. 657.

BLAND, P. J.—Plaintiff is the father of Arthur Baxter, a minor. The suit is to recover damages for injuries to the son caused, as alleged, by the negligence of the defendant's servants in the management and operation of one of its street cars on Arsenal street, in the city of St. Louis. The petition alleges, and the evidence shows, that on August 27, 1901, Arthur Baxter, then twelve years old, was in the employ of Isaac Davis, an ice dealer; that the boy's duties were to go on the ice wagon and to carry ice from the wagon to such houses as the driver of the wagon should direct; that on the above named day, the boy was on the seat of the

ice wagon with the driver, Albert Davis, travelling west on the north side of Arsenal street; that there are two street railway tracks in the street, cars going west occupying the north track; that the ice wagon was being driven near the north rail of the north track; that when it had passed about one hundred and fifty feet beyond where Spring avenue crosses Arsenal street, a car running west on the north track struck the hub of the rear wheel of the wagon with such force as to throw the boy and the driver out into the street; the boy fell to the north in front of the wagon and the wheel of the wagon passed over his left leg and broke it above the knee, causing a compound fracture from which he has not, and never can recover.

Various contentions for a reversal of the judgment are made by the appellant company. These we will take up in the order in which we find them in the brief of counsel.

1. It is insisted that appellant's instruction (asked and refused) that under the evidence offered by plaintiff he was not entitled to recover, should have been given. Plaintiff's evidence tends to show that the bed of the ice wagon on which he was travelling was constructed as such wagons usually are, i. e.; with a canvas covered bed, a seat in front for the driver, the back of which closed the entire front of the covered part of the wagon with a half-moon shaped hole in the back of the seat to enable the driver to look behind him; that the curtain on the rear end of this wagon was old and torn into strips so that ordinarily one on the seat could, by looking through the moon hole see the street from the rear of the wagon; that in the forenoon of the day of the accident, the wagon turned into Arsenal street from Grand avenue and travelled west.

Plaintiff's son testified when they had gone about one hundred and fifty feet on Arsenal street, he looked east to see if a car was coming; that again when the wagon had travelled about four hundred and fifty feet

on Arsenal street he looked east for a car but saw none, and that he could see at least two blocks east; that after this the wagon proceeded about three hundred feet, when it was struck by a car running west; that the wagon had about one ton of ice on it and was a one-horse wagon; that there was a slight down grade and the horse was walking in a brisk walk.

He further testified that he did not hear any bell sounded, and that if it had been sounded he would have heard it; nor did he hear the rumbling of the car as it approached, and knew nothing of it until, to use his own language, "he was thrown up in the air," that the car ran from seventy to one hundred feet after it struck the wagon. He also testified that on account of some ruts along the north side of the street, the driver pulled in close to the railway track about three hundred feet east of where the wagon was struck and continued to drive very near to the track until the wagon was struck; that after driving in near the track he did not look to see if a car was coming; that if he could not see back through the hole in the rear of the seat when he wanted to look back, he would get up on the seat and look back; that the day was clear and he could both see and hear well; that he did not notice a car pass travelling east just before the accident; that he listened for a car bell but did not hear any.

One witness testified for the plaintiff that he was on the car and that it was running at a speed of twenty-five miles an hour when it struck the wagon, and that it ran from seventy-five to eighty feet after it struck the wagon. Another witness for plaintiff, who was also aboard the car at the time, testified that he thought the speed of the car was from ten to twelve miles an hour.

There was a great deal of countervailing evidence offered by the defendant, but whether or not the court erred in refusing a compulsory nonsuit must be answered by considering the evidence offered by the plaintiff, separate and apart from the defendant's counter-

vailing evidence, and in considering the plaintiff's evidence with a view of ascertaining whether or not he made out a prima facie case entitling him to go to the jury, the testimony offered in his behalf should be taken as true and every reasonable inference therefrom in favor of plaintiff should be drawn. Pauck v. Provision Co., 159 Mo. 467; Buckley v. Kansas City, 156 Mo. 16; Steube v. Iron & Foundry Co., 85 Mo. App. 640; Dorsey v. Railway, 84 Mo. App. 528; Shermerhorn Bros. Co. v. Herold, 81 Mo. App. 461. But defendant insists that the boy's evidence is opposed to some of the physical facts shown in the case and hence is not entitled to credence. He testified that he could see east for at least two blocks, or about nine hundred and fifty or one thousand feet; that when they were about one hundred and fifty feet from Grand avenue, he looked back east and again when they were about four hundred and fifty feet west of Grand avenue, and that at neither time did he see a car; that the wagon was struck by the car about three hundred feet from the point where he last looked back. The contention is that the car could not have run the length of two blocks, or one thousand feet on that street, while the wagon moved only three hundred feet, and if the boy looked when he said he did he must have seen the car. We see nothing improbable in the statement of the boy, even if it is conceded that the car ran one thousand feet while the wagon was moving only three hundred feet, hence we can not say that his testimony in respect to looking back and not seeing the car is opposed to the physical facts.

Defendant's employees testified that a car travelling east on the south track passed the wagon just before it was struck. The boy testified that he did not see that car. It is contended that this testimony is opposed to the physical facts; that a car passed near by him just before the accident. Now, it may be true that a car passed and the boy did not see it, for it is the experience of mankind that objects at times pass near us within

plain view that we are not conscious of seeing and noises are sounded in our ears that we are not conscious of hearing, but the physical fact relied on, that the car passed, is not a fact that proves itself but is dependent upon the evidence of witnesses to establish it and could therefore be overthrown by the evidence of other witnesses. If we take the plaintiff's evidence as true and make every favorable inference from it that is reasonable, we have this condition of things: An open street with a double street railway track laid in its center, with a car travelling west on the north track at a high rate of speed; three hundred feet in front of it and within a foot or a foot and one-half of the track on which the car is running, is a covered wagon proceeding slowly in the same direction, the driver of the wagon is hidden from view, the car is running at a rapid speed, without giving any warning of its approach, overtakes the wagon, strikes the hub of the wheel, and hurls the boy into the air; he falls on the street in front of the wagon which is pushed or pulled over him and the car runs on from seventy-five to one hundred feet before it is stopped. In these circumstances it may be conceded, for the sake of argument, that both the driver and the boy were guilty of negligence in failing to look back for a car after the wagon had been pulled in close enough to the track to be struck by a car moving on it, nevertheless, it is not the law that this negligence necessarily precludes the plaintiff from recovering. The negligence of the boy and of the driver first exposed the boy to the risk of being injured by a car coming from the east, but it seems to us that this exposure was seen, or could have been seen, by the motorman in charge of the car, by the exercise of ordinary diligence in time for him to have stopped his car and avoided the accident; if so, then his negligence in not stopping the car was the proximate cause of the injury. Klockenbrink v. Railroad, 81 Mo. App. 351. The principle of law in such circumstances is that "the party who has the last op-

portunity to avoid the accident is not excused by the negligence of anyone else.'' Shearman & Redfield on the Law of Negligence (5 Ed.), sec. 99; Bunyan v. Railway, 127 Mo. 12; Morgan v. Railway, 159 Mo. 262; Holwerson v. Railway, 157 Mo. 216; Schmidt v. Railroad, 163 Mo. 645; McAndrew v. Railway, 88 Mo. App. 97; Hutchinson v. Railway, 88 Mo. App. 376; Edwards v. Railway, 94 Mo. App. 36.

It is also shown by the evidence that the boy did not hear the bell of the car, that had it been sounded he would have heard it; and the evidence further shows that the motorman saw, or by the exercise of due diligence could have seen, the wagon, moving along in dangerous proximity to the track. In these circumstances; it was his duty to have sounded the bell in time to allow the driver to pull away from the track; his failure to do so was negligence, for had he sounded the bell the probabilities are it would have been heard and the wagon pulled away from the track in time to have avoided injury. Grocer Company v. Railroad, 89 Mo. App. 391; Morgan v. Railway, supra. We conclude that plaintiff's evidence entitled him to go to the jury.

2. Contributory negligence was alleged in the answer as a defense. The court in effect, instructed the jury that the negligence of Davis, the driver of the wagon, should not be imputed to plaintiff's son, but that before it could be found that he was guilty of negligence contributing to the injury, the jury should find that he, independent of Davis, was guilty of negligence. It is contended by appellant that the negligence of Davis, the driver, should be imputed to the boy. The evidence shows that the driver and the boy were engaged in one and the same employment, to-wit, hauling and delivering ice. The driver had charge of the wagon and drove the horse and handed out the ice from the wagon to the boy, who carried it from the wagon and delivered it to the customers; both rode on the wagon, occupying the same seat.

Plaintiff was not thirteen years old when he got hurt and the driver of the wagon was eighteen. Plaintiff had nothing to do with the driving and no control over it. He and the driver, therefore, were not engaged in a joint enterprise in such sense that the driver's negligence could be imputed to him. That rule only comes into play where two persons are co-operating to do the same thing; but plaintiff's duties were entirely distinct from those of the driver and he could not possibly influence the driver's course by any authority he had over him, and should not be responsible for the driver's negligence. The case of Kertel v. Railroad, 28 Mo. App. 657, is directly in point and settles this question.

All the cases cited by the appellant, except one in New York, are where the persons were engaged in doing the same thing; that is, controlling the team, say, and under such circumstances the negligence of one is held to be imputable to the other because each may influence the other's conduct.

In Dickson v. Railroad, 104 Mo. 491, it is directly decided that the negligence of a driver of a vehicle, he not being in the employment or under the control of the person injured, can not be imputed to the latter.

In Munger v. Sedalia, 66 Mo. App., in an action for injuries sustained by his wife, it was held that a city can not set up negligence of a husband in driving over a sand-pile which was negligently left in a street.

In McCormack v. Railroad, 2 Am. Neg. Rep. 631, the view is supported that there was no joint venture by Davis and the plaintiff under the evidence shown in this case; they were merely co-employees of the same employer.

Shron v. Railroad, 3 Am. Neg. Rep. 62, on its face might lend some countenance to the defendant's contention. But the opinion in that case was written by the same judge who wrote the opinion in the McCormack case; hence, it is fair to conclude that the facts of the two controversies were entirely different and that

the facts shown in the Shron case clearly made out a joint venture, that is, that the person injured and the person with him were actively engaged in doing the same thing.

In New York, etc., Railroad v. Kestler, 12 Am. Neg. Reg. 343, a father and daughter were driving on a country road in a buggy and he was injured by a freight train. The father was deaf and there was evidence to show the daughter was taken along to listen for trains. In view of this evidence it was held that it was for the jury to say whether they were both engaged in the driving and if they were, the daughter's negligence would be imputable to the father, on the same principle that the negligence of a servant is imputed to the master; namely, that the latter can control the former. The principle of the decision, as of all such decisions, is that the party actually negligent stood in such relation to the injured party that the latter could influence the action of the other and thereby prevent injury by his negligence.

There has been apparently some fluctuation in the Iowa decisions in imputing negligence in a joint venture. Yohn v. Ottumwa, 60 Ia. 429; State v. Railroad, 71 Ia. 209, and in the last cited case the Supreme Court took occasion to repudiate the doctrine which had been attributed to that court by text-writers because of their construction of their decision of Stafford v. City of Oskaloosa, 57 Ia. 748.

Perhaps it is fairly deducible from the last opinion by that court that it holds now, as do the appellate courts of this State, that negligence is not imputable on the theory of joint venture unless the relation of the parties injured in the accident are such that the negligent one might have been controlled, or at least influenced, by the other. On the measure of damages the court instructed the jury for plaintiff as follows:

"5. If the jury finds a verdict in favor of the plain-

tiff, it should assess his damages at such an amount as the jury believe from the evidence, will be a fair compensation to plaintiff.

"First. For such a sum as he reasonably incurred for medicines, hospital charges, drugs and appliances in the treatment of his said son, occasioned by said injuries;

"Second. For such a sum as it was reasonably worth for the nursing of said son by plaintiff and his wife occasioned by the injuries in question; and

"Third. For such sum as the jury may believe from the evidence, if any, plaintiff has sustained, or will probably sustain by way of loss or partial loss of services of his said minor son occasioned by said injuries, until he attains the age of twenty-one years, taking into consideration the earning capacity of the boy in his injured condition, and also the possibility of his death before reaching the age of twenty-one years. And the jury in assessing the plaintiff's damages will confine itself to the elements of damages above enumerated but the total damages allowed if any, must not exceed the sum of forty-two hundred dollars."

Counter to this instruction the court gave the following:

"The court instructs the jury that the plaintiff can not recover in this action for the present condition of the plaintiff's son, Arthur Baxter, if you believe and find from the evidence that the second injury or breaking of the limb was caused by the carelessness of the said Arthur Baxter himself, and you believe from the evidence that the present condition of said Arthur Baxter is the result of such second injury."

In respect to the injuries, the evidence shows a compound fracture; that the bone protruded through the flesh, skin and boy's clothing; that he was taken to St. Mary's Infirmary and there treated by Dr. R. F. Amyx for over five months; that when the plaster of paris cast was taken off, Dr. Amyx thought, and testified, that

there had been a union of the broken bone and the boy was sent home with instructions from Dr. Amyx to exercise his leg carefully on crutches. He went home, the wound had not healed, but he was able to walk from one chair to another across the room. After he had been at home for a short time, on a pleasant day, he went out, on his crutches, into the yard and was playing with his sisters. One of them handed him a lemon which he threw, or rather tossed back to her. He heard his leg snap when he made the throw and thought and said he had broken his leg over. When he made the throw, he had his crutches under his arms and the foot of the broken leg on the ground, but that he was not bearing his weight upon it. Dr. Amyx was called in and placed the leg in an iron brace splint. It remained in this condition for several weeks but did not improve. The boy was taken back to the infirmary and his leg operated on. It was found that there was no union of the bone and that the ends at the fracture were diseased. The decayed or rotten parts were removed and the ends wired together. The result is no firm union has taken place and the leg is two and one-half inches shorter than the other. It is bowed out above the knee and the foot turns inward and hangs in front of the other foot.

Dr. Geo. W. Broome testified that he made an examination of the boy's injuries two or three weeks before the trial; that by means of the X-ray he found that "the inner border of those two fragments of the thigh bone are at a very strong angle from the knee joint up to the fracture, and from the fracture up to the thigh quite an angle. Right at the point of angulation the inner margin of the bone came in contact with the inner border of the two fragments of the bone; as I say, quite a considerable angulation." He further testified that he did not think there was a bony union; that the point of contact between the two bones seemed to be a soft, transparent structure and it was impossible for the leg to ever become strong, and that he was very positive that

there never had been a perfect bony union; that "a compound fracture does not necessarily aggravate or extenuate a simple fracture; a compound fracture means the soft parts are involved, the hole extending from the skin into the broken bone. The compound means that this violence that produced the fracture also produced an opening from the skin into the bone; that is what compound means. Had it been comminuted, that, then, would be different; comminuted means the bone broken in several places. Simply a compound fracture does not necessarily make the fracture any worse than if simply subcutaneous. If it is a compound fracture it is always infected; always infection follows, and we require for any union at all that infection to be destroyed. Now, since you ask the question, I understand what the difficulty is in this case; it has been a case of infection right from the start; that has been the element that undoubtedly operated against the union, because the proper application, the proper treatment, seems to have been properly applied."

We think it reasonably appears from this evidence that there never was a cure of the injury; that it continued from its inception down to the day of the trial; that there never was a second fracture of the bone for the reason the original fracture had never healed, at any rate there is substantial evidence to this effect and it was appropriately submitted to the jury.

We think the two instructions on the measure of damages were eminently proper under the evidence and entirely fair to both sides. We discover no error in the instructions given on the issues of negligence and contributory negligence. Those given cover all there was for the jury to consider as to the merits of the cause and hence there was no error in refusing other instructions asked by the defendant. The verdict was for $2,500. The trial judge thought it excessive, in consequence of which the plaintiff remitted $500, and judgment was rendered for $2,000. The evidence shows that

for treatment of the injury plaintiff had paid out $500. In view of this expenditure, we think the judgment is for a reasonable amount and should be affirmed.

The judgment is affirmed. *Reyburn* and *Goode*, *JJ.*, concur.