SCHOPP FRUIT COMPANY, Appellant, v. MIS-SOURI PACIFIC RAILROAD COMPANY, Respondent.

St. Louis Court of Appeals, November 28, 1905.

1. **COMMON CARRIERS: Conversion: Delivery.** In an action by a shipper against a railway company for conversion of a carload of apples shipped over the defendant's road, where the plaintiff's bill of lading was attached to a draft upon the consignee and sent through a bank, and provided that the apples were to be delivered upon it's presentation by the consignee, the plaintiff could not maintain his action under the facts except on showing that the apples were delivered without such presentation of the bill of lading.

2. ———: ———: ———: **Inspection.** Where in such action, the bill of lading provided that the consignee should be notified of the arrival of the apples, and should be allowed to inspect them, the fact that the car was switched onto the side track of the defendant for the purpose of permitting such inspection is not evidence of such delivery.

3. ———: ———: ———: ———. And where the car was kept open during the day for the purpose of ventilation, the fact that the consignee took out some of the barrels but afterwards replaced them is not evidence of such delivery.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas*, Judge.

AFFIRMED.

*Kinealy & Kinealy* for appellant.

(2) It was error for the court to give the instruction which it gave on behalf of respondent unless such instruction would have been proper if the trial had been before a jury. Vincent v. Means, 184 Mo. 327, 82 S. W. 96; Butler Co. v. Bank, 143 Mo. 13, 44 S. W. 1047. (2) In considering a demurrer to the evidence every fact and reasonable inference which the proofs justify must be taken as absolutely true. Pauck v. St. Louis Dressed Beef Co., 159 Mo. 467, 61 S. W. 806; Baxter v. St. Louis Transit Co., 103 Mo. App. 597, 78 S. W. 70; Ladd v. Williams, 104 Mo. App. 390, 79 S. W. 511. (3) The evidence in this case shows a conversion by the respondent railroad company. Marshal Grain Co. v. Railroad, 176 Mo. 480, 75 S. W. 638; 6 Cyc. Law and Proced., p. 472; Bishop on Non-Contract Law, sec. 405. (4) The statement of cause of action filed before the justice of the peace was amply sufficient. Darnell v. Lafferty, 113 Mo. App. 282, 88 S. W. 784; Force v. Squier, 133 Mo. 306, 34 S. W. 574; Allen v. McMonogle, 77 Mo. 478; Kehoe v. Phillipi, 42 Mo. App. 292.

*Martin L. Clardy* and *Henry G. Herbel* for respondent.

As it conclusively appears from the evidence that the apples were ready for delivery on November 10th, and that the Bonham Grocer Company finally refused to accept them on the 17th of November, 1902, they had been there for at least a week's time, the liability of the defendant for these apples had ceased, and under the ordinary rules of law the Texas & Pacific Railway Company, the custodian thereof, became liable to plaintiff

115 app—23

as a warehouseman.  Hull v. Railroad, 60 Mo. App. 598; Cramer v. Express Co., 56 Mo. 528; Buston v. Railroad, 56 C. C. A. 323.

BLAND, P. J.—The suit was commenced before a justice of the peace in the city of St. Louis.  For cause of action the plaintiff filed the following complaint (omitting caption):

"Plaintiff states that it is and was at all times herein mentioned a corporation duly organized according to law, and the defendant is and was at all said times a railroad corporation engaged in business as a common carrier in the transportation of freight and passengers for hire over lines of railroad operated by it in Missouri and other States; that on or about the seventh day of November, 1902, plaintiff delivered to defendant and defendant received from plaintiff one hundred and eighty barrels of apples; that on receipt of said property defendant for and in consideration of certain freight charges to be paid it contracted and agreed with plaintiff in a certain written contract or bill of lading herewith filed, marked Exhibit 'A' and hereby referred to and made a part of this petition, to well and safely transport and carry said one hundred and eighty barrels of apples from the city of St. Louis, and State of Missouri, to Bonham, in the State of Texas, and there deliver same to the order of plaintiff; that in and by said contract it was agreed that in case of the loss of such property the amount of such loss or damage accruing to the owner thereof shall be computed at the value or cost of the said goods at the time and place of shipment.  Plaintiff states that the defendant in violation of its said agreement and in total disregard of its duty as a public carrier failed and neglected to deliver said property at its destination or elsewhere to plaintiff or to any one on its order whereby and because whereof the said property has become wholly lost to plaintiff; that said property was on said seventh day of Novem-

ber, 1902, and at said city of St. Louis, of the value of $395. Plaintiff states that by reason of the facts aforesaid it has been damaged in the sum of $395, for which together with interest and costs, it prays judgment against defendant."

The cause was in due course appealed to the St. Louis Circuit Court where, on a trial *de novo* to the judge sitting as a jury, the issues were found for the defendant.

The evidence shows that on November 6, 1902, the Bonham Wholesale Grocery Company, of Bonham, Texas, wired the plaintiff at St. Louis for quotations on one hundred barrels of fancy Ben Davis, twenty-five barrels of choice Ben Davis, twenty-five barrels of Kings and thirty barrels of Jonathan apples. Receiving satisfactory quotations, the grocery company ordered the apples and, on November seventh, the plaintiff delivered the apples (one hundred and eighty barrels) to the defendant to be carried to Bonham, Texas, consigned to the plaintiff. The bill of lading for the apples, with the following memorandum written thereon: "Notify Bonham Gro. Co. ·Allow inspection," was duly made out and delivered to plaintiff, who attached a draft on the Bonham Grocery Company for three hundred and ninety-five dollars to the bill of lading and delivered the same to the German American Bank of St. Louis. The bank transmitted the bill of lading with draft attached to a bank in Bonham for collection. The draft was not paid and it, with the bill of lading was returned to the St. Louis bank. Plaintiff took up the draft and bill of lading from the St. Louis bank. The defendant delivered the apples (a carload) to its connecting carrier, the Texas & Pacific Railway Company, and this company carried the car to Bonham, Texas. The car arrived on the evening of November ninth. On the following morning, the car was switched on a side track of the Texas & Pacific Railway Company which ran along and near the rear end of the Bonham Grocery Com-

pany's warehouse. On the strength of the memorandum, to allow inspection by the Bonham Grocery Company, indorsed on the waybill, the railroad agent opened the car on the morning of November tenth, and the grocery company, in his presence, emptied five barrels of the apples and inspected them. The apples were not in good condition and the grocery company notified plaintiff by wire that one-third of the apples were damaged by decay and asked what to do with them. Plaintiff wired back on the same day, that the grocery company was mistaken and advised the company to open barrels. On the receipt of this wire and in the presence of the railroad company's agent, the grocery company opened twenty-five more barrels and reported to the plaintiff by wire that by actual count it found twenty-five per cent of the fancy Ben Davis, sixteen per cent of the choice Ben Davis and ten per cent of the Jonathans decayed and that the Kings were not of the quality ordered. Between November eleventh and seventeenth other telegrams in regard to the condition of the apples passed between the grocery company and the plaintiff, resulting in the refusal of the grocery company to take the apples.

On November seventeenth the following telegrams passed:

"11-17-02.
"Bonham Whol. Grocer Co., Bonham, Texas.

"You refusing apples and demanding them on consignment acting bad faith. We filled order good faith and entitled to legitimate settlement. What will you do. Answer.

"CONRAD SCHOPP FRUIT CO."

"Bonham, Texas, Nov. 17, 1902.
"C. Schopp Fruit Co., St. Louis.

"We will assort and handle apples for twenty-five cents per barrel and give you all there is in it.

"BONHAM WHO. GRO. CO. (10:12 a. m.)"

"11-17-02.

"Bonham Grocery Co.

"Don't want to commission apples. What deductions do you claim? How many barrels left in car? Answer.

"CONRAD SCHOPP FRUIT CO."

"Conrad Schopp Fruit Co.

"We don't want anything more to do with the apples. They are here subject to your orders.

"BONHAM GRO. CO. (12)."

"11-17-02.

"Bonham Grocery Co.

"Are apples all in car so we can divert? Rush answer.

"CONRAD SCHOPP FRUIT CO."

"11-17-02.

"Conrad Schopp Fruit Co.

"All apples in car except four barrels Jonathans, which we sold this day.

"BONHAM GROCERY CO. (4:27 p. m.)."

"11-17-02.

"Bonham Grocery Co.

"Since you took part you can take balance if you cannot make any other disposition.

"CONRAD SCHOPP FRUIT CO."

"Nov. 17.

"Conrad Schopp Fruit Co.

"We have taken up the four barrels. Car is here subject to your order.

"BONHAM GROCERY CO. (8:02 p. m.)."

The evidence shows that on receiving the following telegram: "Don't want to commission apples. What reduction do you claim? How many barrels left in car? Answer," the grocery company, supposing an agreement would be reached with plaintiff, delivered four barrels of Jonathans to fill an order taken before the

car arrived. On being notified that plaintiff would consider the delivery of the four barrels an acceptance of the entire lot, the grocery company gathered up the four barrels and placed them back in the car and notified plaintiff of the fact. Plaintiff refused to have anything more to do with the apples and the railroad company, as authorized by the laws of Texas, advertised and sold the apples at public auction for the payment of freight and other charges. At the sale the apples brought two hundred and twenty-five dollars, the Bonham Grocery Company being the successful bidder. After deducting the freight charges, demurrage, cost of handling and advertising the sale, sixty-one dollars and seventy-five cents remained. This sum was tendered plaintiff but refused.

The bill of lading was never presented to the defendant or to the Texas & Pacific Railway Company nor was any demand ever made by plaintiff upon the defendant or the Texas & Pacific Railway Company for the apples.

The evidence shows the car was not iced; that the weather was warm and it was necessary to give the car all the ventilation possible to prevent the apples from decaying, and the railroad agent at Bonham, Mr. Booth, testified that he kept the doors of the car open during the day for the purpose of ventilation but sealed them at night, and that the contents of the car were not disturbed to his knowledge or by his consent; that he did not know of the removal of the four barrels of apples by the grocery company until informed of the fact by Mr. Howard, the manager of the company. Mr. Howard testified that Mr. Booth had no knowledge of the removal of the four barrels of apples from the car until he notified him of the fact after the company had received plaintiff's telegram that it considered the removal of the four barrels an acceptance of the carload.

The evidence shows that the Bonham Wholesale

Grocery Company is rated as worth from seventy-five to one hundred thousand dollars.

The evidence is that the side track, on which the car of apples was placed on November tenth, was the exclusive property of the Texas & Pacific Railway Company; that it was not built for the exclusive use of the Bonham Grocery Company, but for its use and the use of other shippers who had warehouses along the side of the track. And Booth, the agent, testified that the car was never delivered to the grocery company but remained continuously in the possession and under the control of the railroad company and that the apples, except the four barrels taken out by the grocery company, were never out of the possession of the railroad company until they were sold at public auction.

At the close of all the evidence the defendant offered an instruction that under the law and the evidence plaintiff could not recover. The court gave this instruction and found the issues for the defendant.

1. The suit is in conversion for the value of one hundred and eighty barrels of apples. To show a conversion it was incumbent on the plaintiff to prove that the apples were actually or constructively delivered to the Bonham Grocery Company. Plaintiff concedes this much. As a demurrer to the evidence was given, plaintiff invokes the settled rule of practice, that in determining whether or not plaintiff made out a prima facie case, every fact and reasonable inference that the proof justifies must be taken as true. [Pauck v. St. Louis Beef & Provision Co., 159 Mo. 467, 61 S. W. 806; Duerst v. St. Louis Stamping Co., 163 Mo. 607, 63 S. W. 827; Baxter v. St. Louis Transit Co., 103 Mo. App. 597, 78 S. W. 70; Ladd v. Williams, 104 Mo. App. 390, 79 S. W. 511.] There is no positive or direct proof of the delivery of the apples to the Bonham Grocery Company. There are, however, two facts shown by the evidence from which plaintiff insists a delivery should be inferred; first, that the car was placed on a switch track along-

side of the grocery company's warehouse; and, second, that the grocery company took four barrels of apples from the car and delivered them to its customer on an order previously taken. The waybill and the bill of lading both contain a memorandum to notify the Bonham Wholesale Grocery Company of the arrival of the car and to allow inspection; thus clearly indicating that plaintiff expected the grocery company would handle the apples and granted it the privilege of inspecting them. The railroad company, therefore, by placing the car on a side track near the grocery company's warehouse, simply followed the directions given it by plaintiff by placing the car as conveniently as possible to the grocery company's warehouse for the purposes of inspecting and unloading the apples, in the event the grocery company should conclude to take them, the railroad company retaining possession and control of the car, as the evidence clearly shows it did. No inference of delivery can be inferred from this proof.

In respect to the other fact relied on as tending to show delivery, the evidence of Mr. Booth, the station agent of the railroad company at Bonham, shows that the car was not iced; that the weather was warm and to prevent the apples decaying, ventilation was necessary and the doors of the car were kept open during the day to afford all the ventilation possible; that no permission was given the grocery company to dispose of any of the apples and that he (Booth) did not know of the sale and disposal of the four barrels until after they had been sold, taken back and replaced in the car, when he was informed of the fact by Mr. Howard, the manager of the grocery company. The evidence of Mr. Howard corroborates that of Mr. Booth, and we do not think a reasonable inference can be drawn from this evidence that the railroad company delivered the apples to the grocery company. The record is entirely barren of evidence proving or tending to prove an actual or constructive delivery of the apples by the railroad company to the

Bonham Grocery Company. On the record before us there is not a ray of hope to illume plaintiff's benighted path to a successful verdict, therefore, the judgment is affirmed. All concur.