[No. 1950.   July 30, 1917.]

## LEVERS v. ATCHISON, T. & S. F. RY. CO.

### SYLABUS BY THE COURT.

1. A delivery of property, transported by a common carrier to the consignee, is not made, and does not become effectual, until the consignee is placed in actual or constructive possession of the property. Property, transported in carload lots, may be delivered by the placing of the cars in which such property is loaded upon a siding or other convenient place for unloading, at its destination, and the surrender by the railroad company of its dominion over the same to the consignee. Delivery is not effectuated by the railroad company placing the car upon the privately owned switch of the consignee, used in common by the railroad company and the consignee, in the absence of any facts tending to show

an intent thereby to surrender possession and control over the goods, and where the consignee, before he became entitled to the goods in such car, was required to take up a bill of lading therefor, by paying a draft attached thereto, and such consignee did not assume control over such car, or attempt to do so

P. 603

2 A railroad company is not estopped to deny delivery by reason of the fact that its agent mailed to the shipper a post card, on a printed form supplied by the shipper, stating that the goods had been delivered, and where subsequent communications between the shipper and the consignee clearly showed there had been no delivery.

P. 606

Appeal from District Court, Chaves County; McClure, Judge.

Action by R. E. Levers against the Atchison, Topeka & Santa Fe Railway Company. Judgment for plaintiff, and defendant appeals. Reversed, with direction to enter judgment for defendant.

W. C. Reid, C. M. Botts and George S. Downer, all of Albuquerque, for appellant.

A mere placing of a car upon a side track adjacent to the warehouse of an intended consignee of goods by a railway company, and an inspection, upon authority, of such goods by the intended consignee, without any appropriation or assertion of ownership of the goods, either actual or constructive, and without the surrender of the bill of lading, does not constitute, as a matter of law, a delivery, so as to render the railway company liable to the shipper for a conversion of the goods.

Dudley v. Chicago, M. & St. P. R. Co. (W. Va.) 3 L. R. A. (N. S.) 1135, 62 S. E. 718; Tindell v. St. Louis & H. R. Co., 54 Mo. App. 675; Yuille Miller Co. v. Chicago, etc., R. Co., 164 Mich. 58, 128 N. W. 1099; Schoop Fruit Co. v.

Missouri Pacific R. Co., 115 Mo. App. 352, 91 S. W. 402;
St. Louis Hay & Feed Co. v. Mo. Pac. Ry. Co., 185 S. W.
1162.

C. O. Thompson, of Roswell, for appellee.

Where a carrier transports bulk freight in carload lots
to its destination, and to enable the consignee to unload it
conveniently, places the cars upon the track designated by
the consignee for that purpose, or if he has made no such
designation, upon a track proper for that purpose, and he
has notice thereof, it is held by several courts that the
carrier has performed the last act required by its duty to
the consignee, that the delivery is complete and that the
carrier's liability as a carrier is teminated.

Chicago, Milwaukee & St. Paul Ry. Co. v. G. A. Kelm,
121 Minn. 343; 141 N. W. 295; 44 L. R. A. (M. S.) l. c.
997, citing Pittsburg C. & S. T. L. R. Co. v. Nash, 43 Ind.
423; Pendell v. St. L. K. & T. R. Co. 126, Mo. App. 244;
102 S. W. 1029; Chicago R. I. & P. R. Co. v Kendall, 27
Ill. App. 105; Gregg v. Ill. C. R. Co. 147 Ill. 550; 37 Am.
St. Rep. 238; 35 N. E. 343; Paddock v. Toledo & O. C.
R. Co. 11 Ohio, C. D. 789; Independence Mill Co. v. Bur-
lington C. R. & N. R. Co. 72 Ia. 535; 2 Am. St. Rep. 258;
34 N. W. 320; S. & N. Ala. R. Co. v Wood, 66 Ala. 167;
41 Am. Rep. 749; 4 Elliott on R. R. 2357, 2359, 2358,
Sec. 1427, Sec. 1526; Brewster v. Sillman, 30 N. Y. 423;
B. & O. R . R. Co. v. O'Donnell, 21 LR A. l. c. 121; Rail-
road Co. v. O'Donnell, 49 Ohio St. 489, s. c. 21; L. R. A.
117; 32 N. E. 476; Perkins v. Smith, 1 Wils. 328; Hous-
ton, etc. R. Co. v. Adams, 49 Tex. 748, s. c. 30 Am. R. 116;
Anchor Mill Co. v. C. R. & N. R. Co. (Ia.) 71, N. W.
255. See also Weyl v. So. Pac. Co., 156 Ill. App. 493.

## OPINION OF THE COURT.

ROBERTS, J. Appellee, plaintiff in the court below,
on April 20, 1915, shipped over the road of the appellant to
Nacogdoches, Tex., three carloads of alfalfa hay. The
cars were shipped to appellee, with directions to notify the
Nacogdoches Elevator Company. Bills of lading covering

each car, with drafts attached, were sent to the bank at Nacogdoches, with orders that upon the payments of the drafts the bills of lading should be surrendered to the Nacogdoches Eelevator Company. At the time of the shipment of these cars, the plaintiff mailed to the agent of the Houston, East & West Texas Railway Company at Nacogdoches double perforated post card notices, one for each car. On the back side of these cards was a statement of the date of shipment, the number of the car, and the name of the consignee, together with the request, if the car was for any reason rejected, to wire the shipper, and, when the car was delivered, to fill in the attached return card and return to the shipper by first mail.

The Nacogdoches Elevator Company's warehouse was located upon a side track of about 1,200 feet in length. Of this track the center portion of 400 feet just opposite the warehouse was owned and controlled by the elevator company. The two ends, each of about 400 feet, were owned and controlled by the Houston, East & West Texas Railway Company, and used as storage tracks by it. At the time of the delivery there was no switch engine located at Nacogdoches. The cars in question arrived at Nacogdoches on May 5th, and were kicked in on the east end of the side track leading to the elevator company's warehouse. The evidence is not clear as to whether the cars were on the part of the side track owned by the elevator company or on the railway company's line; but we shall assume, for the purpose of this case, that they were on the part owned by the elevator company. It is proper here to state that the railroad company frequently employed the siding owned by the elevator company for the purpose of storing cars, when the same was not in use by the elevator company. On the morning of the 6th day of May, 1916, the elevator company was given notice of the arrival of the cars, in compliance with the law, and for the purpose of fixing the date of the accrual of demurrage in the event the cars were ultimately accepted. The agent of the railway company at Nacogdoches, on the 7th day of May, filled out the return post cards sent him by appellee, in which he stated that the

two cars in question in this suit had been delivered to the Nacogdoches Elevator Company.

The waybill covering the cars in question did not authorize an inspection of the cars before acceptance. The elevator company took up the bill of lading upon the first car that arrived and unloaded it. This company contended that the hay was not up to the standard ordered by it, and the company thereupon notified the agent of the railway company at Nacogdoches that it would not accept the other cars without inspection. The elevator company wired appellee, asking for the right to inspect the other two cars upon siding, and this telegram was received by appellee prior to the receipt of the card from the agent stating that the cars had been delivered. Appellee, in reply, wired the elevator company, giving it the right to inspect the cars. The cars were inspected and rejected. Thereafter the railway company wired appellee for direction as to the disposition of the two cars of hay. Numerous telegrams passed between the parties, and appellee finally notified the agent of the railway company that, relying upon the fact that the cards mailed by the agent stated that the cars had been delivered, he would hold the railway company responsible for the value of the two cars of hay. Later the hay was sold by the railway company for freight and storage charges.

Appellee instituted this suit against appellant for the purpose of recovering the value of the two cars of hay. The court, after hearing the evidence, found for the appellee, and awarded him judgment for the value of the hay in question. There is no dispute in the record as to the facts. From an opinion filed by the trial court it appears that, in its opinion, the statement by the agent of the Houston, East & West Texas Railway Company at Nacogdoches on the return post cards to the effect that the hay had been delivered was sufficient evidence of delivery to sustain an action for conversion.

[1] As we view it, there are two questions to be decided: First, whether or not the kicking in upon the siding by the railway company of the cars in question constituted a delivery; and, second, if it did not constitute a

delivery, was the appellant bound by the notice contained in the card, to the effect that delivery had been made?

First, as to the question of delivery: This depends upon whether the railway company had placed in the possession of the elevator company the cars in question. That it did not do so is conclusively shown by the testimony of the secretary and treasurer of the elevator company and the agent of the Houston, East & West Texas Railway Company at Nacogdoches. Both testified that it was a custom of the railroad company, when cars were received at that point with goods consigned to the elevator company, to kick the cars in on the side track in question, but the elevator company did not take possession of such cars, where the goods were shipped by bill of lading with draft attached, until the bill of lading had passed into possession of the elevator company upon the payment of the draft; that the cars were put in upon the siding as a matter of convenience, so that, when the bill of lading was taken up, the cars could be moved by hand to the unloading platform of the elevator company.

We think the evidence conclusively shows that there was no delivery of the cars in question. We attach no importance to the fact that the cars might have been pushed upon that part of the track owned by the elevator company, for that would not affect the rights of the parties, unless such act on the part of the railroad company was intended as a delivery, and was accepted as such by the elevator company. Many cars not intended for the elevator company were, from time to time, placed upon this siding. A delivery of property transported by a common carrier to the consignee is not made, and does not become effectual, until the consignee is placed, either in actual or constructive possession of the property. Property transported in carload lots, may be delivered by the placing of the car in which such property is loaded upon a siding, or other convenient place for unloading, at its destination, and the surrender by the railroad company of its dominion over the same, to the consignee. In a note to the case of Rothchild Bros. v. Northern Pacific Railway Co., 68 Wash.

527, 123 Pac. 1011, 40 L. R. A. (N. S.) 773, the author
of the note says:

"There is no delivery of a carload of goods by the carrier,
where it merely places the car containing them on the un-
loading track, where such cars are usually placed, and noti-
fies the person for whom the goods are intended, who, with-
out the knowledge or consent of the carrier, and without
authority from the consignee, breaks the seal of the car, in-
spects the goods, and refuses to accept them, or to pay the
draft attached to the bill of lading therefor"—citing Yuille-
Miller Co. v. Chicago, I. & L. R. Co., 164 Mich., 58, 128 N. W.
1099.

See, also, Anchor Mill Co. v. Burlington, C. & N. R. Co.,
102 Iowa, 262, 71 N. W. 255; Schopp Fruit Co. v. Missouri
P. R. Co., 115 Mo. App. 352, 91 S. W. 402.

In the present case there was no delivery. The cars, up-
on their arrival, were shoved in upon the siding, in a con-
venient place for unloading, or so placed that they could
be easily moved into position for unloading. The bill of
lading, however, which had a draft attached for the price
of the hay, was not delivered, and the consignee exercised
no dominion or control over the property. It did not even
break the seals of the cars, in which the hay was loaded,
and the evidence shows, without dispute, that the course of
dealing between the railroad company and the elevator
company was such that the elevator company, where goods
were shipped under a bill of lading with draft attached,
always took up the bill of lading and presented it to the
railroad company before taking possession of the property.

We attach no importance to the fact that the legal title
to the part of the switch upon which the cars were placed
was in the elevator company. If the placing of a loaded
car upon such switch constituted a delivery by the railroad
company to the elevator company, the railroad company
would be in the anomalous position of delivering to the
elevator company many cars of freight not intended for
it, and the elevator company would become liable for the
loss of all goods placed upon its switch by the railroad
company. By placing the cars upon this switch, the rail-
road company did not surrender its dominion over the prop-

erty, or its control of the same. The cars were simply placed there as a matter of convenience, without intending to make delivery, and such act was not accepted as a delivery by the elevator company.

[2] Nor were the post cards, mailed to appellee, sufficient evidence of delivery to warrant the judgment. That the agent erroneously stated that the cars had been delivered is clearly shown by the facts and circumstances in evidence. In the case of Yuille-Miller Co. v. Chicago, I. & L. Ry. Co., supra, the agent of the railway company at the point of destination wired the agent at point of origin, in response to an inquiry, that goods had been delivered, and the shipper was so notified; and it was held that the railroad company was not estopped to deny delivery, in an action for conversion. Here, as in that case, communications between the shipper and consignee clearly indicated there had been no delivery. The elevator company wired for the privilege of inspecting the hay, and inspection was granted, and this before appellee received the cards from the agent; and this fact should have satisfied appellee that delivery had not been made, as stated in the cards. Even after appellee received the cards, he acted upon the assumption that delivery had not been made, until he ascertained that the elevator company would not accept the hay. When he became convinced of this fact, evidently he decided to hold the railroad company responsible, and notified it that he would hold it responsible for having delivered the property contrary to instructions.

For the reasons stated, the cause will be reversed, with instructions to enter judgment for appellant; and it is so ordered.

HANNA, C. J., and PARKER, J., concur.