LADD et al., Plaintiffs in Error, v. WILLIAMS, Defendant in Error.

St. Louis Court of Appeals, February 16, 1904.

1. **PRACTICE: Evidence: Probative Force for Jury.** It is the constitutional right of every litigant, when he has offered substantial evidence tending to prove his case, to have the probative force of his evidence determined by the jury; and, for the purpose of deciding whether there is substantial evidence to submit to the jury, his testimony should be taken as true and every reasonable inference therefrom in his favor should be made.

2. **WITNESS: Waiver of Incompetency.** Where a party permits an incompetent witness to testify without objection and then cross-examines him in the hope of eliciting favorable testimony, he can not afterwards object to the witness as incompetent.

3. ————: **Chattel Mortgage: Identification of Property.** One of several mortgagees in a chattel mortgage, given to secure the mortgagees as sureties on the mortgagor's note, is not a competent witness to identify the property mortgaged, after the death of the mortgagor, under section 4652, Revised Statutes. 1899, although the mortgage provides that the property could be identified by him.

Appeal from Stoddard Circuit Court.—*Hon. J. L. Fort*, Judge.

REVERSED AND REMANDED.

*Mozley & Wammack* for plaintiff in error. ·

(1) "It is for the jury, and not for the court, to pass on the weight of evidence, where there is any evidence." This rule has no exceptions, and is as old as the jury system itself. Kelly v. Railroad, 70 Mo. 604; Cook v. Railroad, 63 Mo. 398; St. Vrain v. C. B. L. Co., 56 Mo. 590; Tutt v. Coloney, 62 Mo. 116; Holliday v. Jones, 59 Mo. 484; Richey v. Burns, 83 Mo. 364; Hite v. Railroad, 130 Mo. 140. (2) The court erred in not permitting witness, Lee Williams, to specifically identify the mortgaged property in his testimony. He was not within the rule of closing his mouth as a witness on account of the death of the other party to the mortgage. We are of opinion that under ordinary circumstances he could have identified the property without infringing upon the rule, but in the case at bar he was selected by the mortgagor (now deceased) for the specific purpose of identifying the mortgaged property; that selection was reduced to writing by D. K. Williams and acknowledged by him in compliance with all the legal formalities required in the execution of a mortgage. Moreover

we contend that the identification of this property in a suit between the mortgagees and a third person charged with having wrongfully sold it, and to which the mortgagor was never a party, is an independent fact to which either of the mortgagees were competent to testify. Banking House v. Rood, 132 Mo. 256; Bates v. Forcht, 89 Mo. 127. (3) On cross-examination of witness R. L. Ladd, defendant elicited the following testimony with respect to declarations of D. K. Williams, viz: That D. K. Williams told him that the cattle and hogs shipped by defendant were the hogs and cattle described in the mortgage of 1896, given by him to plaintiffs. The witness had not testified as to these declarations in his direct examination; after testifying to them in Hume v. Hopkins, 140 Mo. 65; Hoen v. Strattman, 71 Mo. App. 402; Tomlinson v. Ellison, 104 Mo. 106.

*C. L. Keaton* for defendant in error.

(1) The description of the property in the petition —six head of cattle with their increase, and seventy-five head of hogs with their increase of the value of $1,250, and that described in the mortgage—"Six head of cattle (all my cattle) all of my hogs about seventy-five head (75)"—does not describe the same property, and is so vague and uncertain as to be ineffectual and void for uncertainty as to defendant. Plaintiffs did not and could not identify the property and the court did right to so declare to the jury in the instruction. Stonebreaker v. Ford, 81 Mo. 537; Chandler v. West, 37 Mo. App. 635 and cases and authorities cited; May v. Crawford, 150 Mo. 527 and cases cited; Carter v. Railway, 156 Mo. 642. (2) F. M. Ladd, R. L. Ladd and Lee Williams are incompetent witnesses for themselves claiming under the mortgage of D. K. Williams, who is dead. All our appellate courts have so decided. R. S. 1899, sec. 4654, proviso I; Meier v. Thieman, 90 Mo. 441; Saetelle v. Life Ins. Co., 81 Mo. App. 516 and cases

cited; Miller v. Slupsky, 158 Mo. 646 and cases cited; Baker v. Reed, 162 Mo. 353. (3) The defendant had a right to cross-examine plaintiffs as witnesses to show the true source of their information and that it was based exclusively upon the conversations of D. K. Williams, the other party to the mortgage, who is dead, without waiving their incompetency and the court did right to take the whole case from the jury for want of competent evidence. Hollman v. Lange, 143 Mo. 106; Page v. Pankey, 6 Mo. 423; Walter v. Hoeffner, 51 Mo. App. 50-52; State v. Soper, 148 Mo. 235; Hite v. Street Railway, 130 Mo. 140.

BLAND, P. J.—In substance, the petition alleges that on the — day of March, 1899, plaintiffs were the owners of six head of cattle with their increase and seventy-five head of hogs with their increase, of the value of twelve hundred and fifty dollars; that afterwards, on the — day of March, 1899, the defendant wrongfully took possession of all said property and unlawfully converted it to her own use to plaintiffs' damage in the sum of twelve hundred and fifty dollars, for which they ask judgment.

The answer was a general denial.

At the close of all the evidence, the court instructed the jury that plaintiffs had entirely failed to identify the property claimed, and directed the jury to return a verdict for defendant. Plaintiffs preserved the evidence and their exceptions by bill of exceptions duly signed and filed, and brought the case to this court by writ of error.

The evidence shows that the plaintiffs, on August 6, 1896, became sureties on a note of D. K. Williams, payable to C. D. Matthews, for seven hundred dollars. To secure plaintiffs as such sureties, D. K. Williams executed, acknowledged and delivered to plaintiffs a chattel mortgage on a lot of personal property including all his cattle (six head) and all his hogs (about seventy-five

head) situated on his farm adjoining the town of Dex-
ter, in Stoddard county, Missouri, and named Lee Wil-
liams (one of the plaintiffs) and Anderson Williams, his
son, as persons who could identify the property. The
mortgage was duly recorded on August 10, 1896. Wil-
liams failed to pay the note at maturity and it was paid
by the plaintiffs, his sureties, before the commencement
of the suit. D. K. Williams died in November, 1900.
The defendant is his widow. On March 6, 1899, defend-
ant shipped a carload of hogs and a mixed car of hogs
and cattle (about fifteen or sixteen cattle) from the Wil-
liams farm to Blakely-Sanders-Mann Company, Na-
tional Stock Yards, Illinois. The shipment was received
by the Blakely-Sanders-Mann Company and sold on the
market as the property of defendant and a draft for the
proceeds of the sale ($982.10) was drawn by Blakely-
Sanders-Mann Company, payable to the defendant and
remitted to her. She received and cashed the draft and
used the proceeds in the purchase of a grocery store
in Dexter in her own name, after the death of her hus-
band. Plaintiffs claim that the hogs and cattle shipped
on March 6, 1899, were the hogs and cattle and their in-
crease embraced and described in the mortgage. To
prove this contention Lee Williams, the brother of D. K.
Williams and one of the parties named in the mortgage
as a person who could identify the mortgaged property,
testified that he knew the property, saw it every few
days on his brother's farm up to and within one or two
days before the shipment of March 6th; that about
March 6th, it suddenly disappeared; that shortly there-
after the defendant told him she had shipped all the
stock from the farm; that the cattle consisted of cows
and that there were a number of brood sows among the
hogs, and there was the usual increase from each from
year to year after the mortgage was given.

R. S. Ladd testified that he knew the stock, saw it
all along on D. K. Williams' farm after the mortgage
was given; that it suddenly disappeared about the first

of March, 1899; that he looked the matter up and after finding that defendant had made the shipment of March 6th, he had a conversation with her about the stock included in the mortgage and she told him she had shipped the stock and used the money in paying a debt she owed her mother. On his cross-examination the following occurred:

"Q. Then you don't know, and are not swearing that these hogs shipped on the 5th, 6th, 7th and 8th of March were the same hogs you saw on the farm—do you know? A. Mr. D. K. Williams told me they was.

"Q. Who? A. Mr. D. K. Williams.

"Q. But you don't know from your knowledge or observation? A. The best of my knowledge they were, because I saw the hogs on the farm, and when I came home; they told me the hogs were shipped—

"Q. I don't care about that; do you know? A. I went to the records and found the hogs were shipped in Mrs. Williams' name—I first went to the farm and Mr. Williams told me himself that she shipped them in her name—

"Q. What hogs—the hogs mortgaged? A. Yes, sir.

"Q. In whose presence? A. Me and D. K. Williams.

"Q. No one else? A. No, sir.

"Q. And Mr. Williams is dead? A. Yes, sir.

"Q. I was asking you, Mr. Ladd, if you know of your own knowledge that those hogs were the same hogs? A. That is all the knowledge I have of it.

"Q. That is all the knowledge you have of it? A. Yes, sir.

"Q. That is all. One further question: Did he, also tell you they were the same cattle he had in his mortgage? A. Yes, sir.

"Q. You are sure of that, are you? A. Yes, sir.

"Q. Did he tell you in what mortgage they were

described? A. Yes, sir, we talked over the matter a number of times.

"Q. Did he tell you in what mortgage? A. Yes, sir.

"Q. Which one? A. The one made in 1896; they were only described in one mortgage.

"Q. That is all."

Re-direct examination.

"Q. (By Mr. Mozley): One other question now: When you went to the farm the second time after learning of the shipment, tell the jury if you found any of the stock covered by your mortgage, on the farm? A. No, sir, none at all.

"Q. Never seen them since? A. No, sir, he told me—

"Mr. Cramer: We object to what he told you.

"Q. I never asked him that. That is all.

"Mr. Cramer: If the court please, we move to exclude the statement made by D. K. Williams, as being incompetent testimony.

"The Court: Very well, the motion sustained; the testimony in reference to the declaration of D. K. Williams will be stricken out.

"Mr. Mozley: We except."

On the examination of Lee Williams the following occurred:

"Q. Now, Mr. Williams, I will ask you, if those cows and calves and hogs that you have spoken of to the jury are the cows and hogs—cattle and hogs and their increase described in the mortgage of 1896, and held by you and your coplaintiffs in this suit?

"Mr. Cramer: We object to that, if the court please, as being incompetent.

"The Court: Objection sustained.

"Mr. Mozley: We except. I offer to prove by Lee Williams that the property shipped by the defendant, Mrs. E. J. Williams, consisting of hogs and their increase, and cattle and their increase, is the property de-

scribed in the mortgage executed by David K. Williams on the sixth of August, 1896, to the plaintiffs in this suit.

"Mr. Cramer: We object to it because it is incompetent; the witness being incompetent to testify, because D. K. Williams the other party to the mortgage is dead.

"The Court: You admit that D. K. Williams is dead.

"Mr. Mozley: Yes, sir; I think he is.

"The Court: Objection sustained.

"Mr. Mozley: We except."

1. On the part of the defendant, the evidence is strong that five of the cattle described in the mortgage died, or were accidentally killed in 1898, and that the other one was sold by D. K. Williams in the same year, and there was no living increase from any of these cattle on the farm when the shipment of March 6th was made; that all the hogs, except one or two old sows and a few shoats, with all their increase were sold by D. K. Williams in the year 1898; that the hogs and cattle shipped in March, 1899, were young hogs and cattle that had been purchased by D. K. Williams the year previous. It seems to us that the weight of the evidence greatly preponderates in defendant's favor, but the plaintiffs offered substantial evidence tending to prove their contention, that the cattle and hogs shipped on March 6th were the cattle and hogs and their increase described in the mortgage. Plaintiffs made a prima facie case and it is not within the province of this court nor was it within the province of the judge, who presided at the trial, to pass upon the probative force of the evidence and take it from the jury. The constitutional right of every litigant is, when he has offered any substantial evidence tending to prove his case or defense, that the probative force of his evidence shall be passed upon by the jury selected to try the issues. Richey v. Burnes, 83 Mo. l. c. 364, and cases cited; Wolff v. Campbell, 110 Mo. 114; Hirsch v. Lodge, 78 Mo. App. 358. And for

the purpose of deciding whether or not plaintiffs' case should be submitted to the jury, plaintiffs' testimony should be taken as true and every reasonable inference therefrom in their favor should be made.    Pauck v. St. Louis Beef & Provision Co., 159 Mo. 467; Duerst v. St. Louis Stamping Co., 163 Mo. 607; Steube v. Iron & Foundry Co., 85 Mo. App. 640.

2.    If it be conceded that Ladd was not a competent witness the defendant waived the incompetency by not making a timely objection to his testimony.    The objection made was not until the defendant had drawn from the witness, on his cross-examination, evidence that she was not expecting and that was prejudicial to her interest. A party can not take the chance of waiving the incompetency of a witness in the expectation of drawing from him favorable testimony for himself and when the experiment proves disastrous, withdraw his waiver and have the evidence he himself had drawn out stricken out of the record.    Banking House v. Rood, 132 Mo. 256; Tomlinson v. Ellison, 104 Mo. 105; Hume v. Hopkins, 140 Mo. 65; Hoehn v. Struttman, 71 Mo. App. 1. c. 402; And the court erred in striking out that part of Ladd's testimony copied in the statement of facts.

3.    Was Lee Williams a competent witness to testify to the facts (identification of the property) that plaintiff offered to prove by him?    He was one of the mortgagees, a party plaintiff and interested in the event of the suit, and the matter in controversy arose out of the mortgage, it was concerning the mortgaged property.    The mortgagor, D. K. Williams, was dead.    The mortgagees were therefore disqualified to testify to any fact concerning the mortgage or its contents.    Section 4652, R. S. 1899.    But it is contended that the following clause in the mortgage, to-wit, "and (the property) can be identified by Lee Williams and Anderson Williams (my son)."    The most that can be said of this clause is that the mortgagor said to the mortgagees, "I have not given you a full and minute description of the prop-

erty I have mortgaged to you and you may not be able to identify it, if not, here is Lee Williams, my brother, and Anderson Williams, my son, they know the property and can identify it for you and I will stand by their identification.'' In other words, D. K. Williams constituted Lee Williams one of his agents to identify the property if the mortgagees should ask for it. In these circumstances, Lee Williams would be a competent witness but for his interest. Stanton v. Ryan, 41 Mo. 510; Clark v. Thias, 173 Mo. 628; Dawson v. Wombles, St. Louis Court of Appeals (not yet reported). His interest, however, disqualified him to testify at all to any facts concerning the mortgage or the property described therein. Section 4652, supra.

A mass of testimony was admitted concerning a chattel mortgage executed on March 7, 1899, by A. Booher to D. K. Williams, and its assignment to these plaintiffs as collateral to secure them as sureties of D. K. Williams on a twenty-seven-hundred-dollar note given by Williams to Matthews. This mortgage and the proceedings taken on it were in no way connected with the matter in controversy and the mortgage and all the evidence in respect to it should be excluded on a retrial of the case.

For errors herein noted the judgment is reversed and the cause remanded. *Reyburn* and *Goode, JJ.,* concur.