## J. F. MERRITT V. STATE OF TEXAS, EX RELATOR.

Decided April 4, 1906.

**1.—Issue of Fact—Peremptory Charge.**

It is only where the state of the testimony is such that but one conclusion can be deduced from it by ordinary minds, that the question at issue becomes one of law and the court is authorized to peremptorily instruct a verdict. Facts considered, and held error to instruct a verdict.

**2.—Incorporating Towns or Cities—Statutes Construed.**

The Act of the Twenty-fourth Legislature, page 17, fixes the area which may be included within the corporate limits in proportion to the number of inhabitants. The Act of the Twenty-fifth Legislature, page 193, provides that the boundaries of a town or village shall include therein no territory "except that which is intended to be used for strictly town purposes." Facts considered, and held, that it could not be said, as matter of law, that all of the territory embraced within the limits described was not intended by the incorporators to be used for strictly town purposes. In determining this question it is proper to make allowance for future growth and expansion by so embracing territory as to insure symmetry of proportion, uniformity and continuity of blocks and streets, etc.

**3.—Res Inter Alios—Harmless Error.**

A deed between third parties was inadmissible and irrelevant to show that the property conveyed had been divided into lots and blocks, and its exclusion, at all events, harmless when that fact was established by other evidence.

**4.—Ordinances of City Council—Incompetent Evidence.**

An ordinance of the city council whereby the council undertook to reduce the boundaries of the city was inadmissible. If the city was incorporated it was beyond the scope of its authority; if it was not incorporated there was no city council.

Appeal from District Court of Val Verde. Tried below before Hon. B. C. Thomas.

*H. E. McMains, Newton & Ward* and *Garrett & Davis,* for respondents.—The court erred in withdrawing this case from the jury and in peremptorily instructing the jury to return a verdict in favor of the plaintiffs, because the pleadings and evidence raised issues of fact which should have been submitted to and passed upon by the jury. Hoard v. State, 94 Texas, 528; Bowman v. Texas Brewing Co., 43 S. W. Rep., 809; Taylor v. Flint, 59 S. W. Rep., 1126; Shifflet v. St. Louis S. W. Ry., 44 S. W. Rep., 918; Choate v. San Antonio & A. P. Ry., 90 Texas, 88; Southern P. Co. v. Winton, 66 S. W. Rep., 483; Lamberida v. Barnum, 14 Texas Ct. Rep., 434; Bonn v. Railway, not yet reported; Thompson v. State, 56 S. W. Rep., 603; State v. Baird, 79 Texas, 63; McCleskey v. State, 23 S. W. Rep., 518; State v. Larkin, 14 Texas Ct. Rep., 587; Junction City School Incor. v. Trustees School District, 81 Texas, 148; City of Austin v. Austin Cemetery Assn., 87 Texas, 338; Railroad Commission v. Houston & T. C. Ry., 16 Texas Civ. App., 129.

The court erred in not allowing respondents to read in evidence before the jury the original records of the deeds to G. Bedell Moore to property in the Casanelli subdivision, showing that in Moore's purchase of said

property he did not buy the streets, but purchased the property with reference to the previous subdivisions of the same into streets and lots, as is shown by respondents' bill of exceptions.

The city council of the city of Del Rio had no power or authority, under the law, to make any change whatever in the boundaries set out in the petition by the people, and as voted for by them at the election held for the incorporation of the city, and the evidence is irrelevant and immaterial to any issue in the case. Foster v. Hare, 62 S. W. Rep., 541; State v. Dunnson, 71 Texas, 71; Buford v. State, 72 Texas, 182; State v. Merchant, 85 S. W. Rep., 484; State v. Larkin, 14 Texas Ct. Rep., 587.

*George M. Thurmond,* District Attorney, *Moore & McDowell* and *Walter Gillis,* for the State.

NEILL, Associate Justice.—This is a proceeding in the nature of a quo warranto, instituted by the State of Texas by the district attorney of the Sixty-third Judicial District, upon the relation of G. W. Tom and others against appellants, averred in the information to be unlawfully claiming to be the mayor, aldermen and city marshall of the alleged pretended municipal corporation of Del Rio—the purpose of the suit being to have declared void the incorporation of said alleged pretended city.

The information alleges, in substance: That on the 16th day of May, 1905, James McLymont, and a number of others presented a petition to the county judge of Val Verde County, requesting that an election be held in the town of Del Rio and in the territory set out therein, which is described by metes and bounds, for the purpose of determining whether said town and territory should be incorporated into a town or city, as provided by the laws of the State of Texas, governing in such matters. That the territory designated by the field notes set out in said petition, is three miles square, and embraces 5760 acres of land.

That acting upon said petition, the county judge of Val Verde County ordered an election to be held on the 27th day of May, 1905, at the courthouse, in said town of Del Rio, to determine whether said town should be incorporated within the boundaries of the territory described therein; that in pursuance to said order, on the 27th of May, 1905, an election was held for the purpose of incorporating said territory into the town or city of Del Rio, and thereafter the county judge of Val Verde made, filed and caused to be entered of record an order in which, after reciting that such an election was held; the number of the votes cast thereat, the number in favor of and against corporation and that the majority in favor of corporation was sixty-five votes, declaring that the inhabitants of said town and territory, as appears by the field notes and plat set out in and attached to said petition for such election, to be incorporated within the boundaries thereof, and said town of Del Rio and surrounding territory to be the city of Del Rio.

The information then alleges that said pretended election and attempted incorporation of said town of Del Rio, with boundaries and containing the territory defined in said application or petition, and in said order above set out, and the entire proceedings attempting to incorporate said

town of Del Rio were, are illegal, null and void, and are of no force or effect, for the following reasons, among others, to wit:

"That of the said territory contained and embraced within the limits of said attempted incorporation only about one-fifth thereof is embraced or included within the actual limits of the said town of Del Rio, while the remainder thereof, amounting to about four-fifths of said territory or about 4,700 acres, was not at the time of said election nor is it now embraced within the actual limits of said town, nor occupied by said residences or other buildings, or in any other manner occupied or used for town purposes nor is or was the same suitable for use, or ever intended or likely to be used for town purposes, as required by law in order to be embraced or included in an incorporated town or city.

"That said territory, amounting to about 4,700 acres, so unlawfully and wrongfully embraced and included within and as a part of the territory to be incorporated in said town, in the application and order of the county judge aforesaid, consists entirely of rural territory, and is made up of swamp land, farming land and pasture or grazing lands. That about 2,000 acres of same is embraced in and covered by farms and meadows, and is used exclusively for farming purposes and for growing hay thereon. That about 100 acres of said land is wild, uncultivated and unused swamp lands, uninhabited, and unfit for any purpose. That the remainder, or about 2,600 acres of said land, is wild, uncultivated, uninhabited and brushy pasture land, used exclusively for grazing purposes.

"That none of said 4,700 acres and none of the territory embraced in said application or order, save and except about one-fifth of same, is occupied or used for town purposes, nor does or would any of said territory, save and except about one-fifth of same, receive any benefit from such attempted incorporation, should the same be held valid, and especially that said relators and the property owned by them, would receive no benefits from said incorporation, because of the fact that they reside outside of and beyond the actual limits and boundaries of said town of Del Rio, and upon their farms and ranches, which have been so unlawfully and wrongfully included and embraced within the limits and boundaries of said pretended incorporation with the object and for the sole purpose of enabling the pretended officers of said pretended incorporated town, to levy and collect taxes upon their said property for city purposes.

"That said four-fifths of said territory, amounting to about 4,700 acres, is not now, nor has it ever been inhabited, occupied or used for town purposes, nor is there any reasonable expectation or likelihood that same will ever be, or is ever intended to be inhabited, occupied or used for town purposes, or for any other purposes than those above set out and for which the same is now being used.

"That said 4,700 acres constitute no part of the real town of Del Rio, but that the same is rural in its character, and, insofar as it is inhabited at all, is inhabited by people residing in residences widely disseminated over the same, and engaged in and pursuing agricultural and pastoral avocations."

It is then averred in the information, that after the order declaring

the result of said election, another was held for the purpose of electing officers of said pretended incorporation of the town of Del Rio, and that at said election, certain persons (whose names are given) residing within the territorial limits of the pretended corporation, claimed and were declared respectively elected to the offices of mayor, aldermen and city marshal; that after said pretended election, the person declared to have been elected mayor and one of those declared to have been elected alderman had resigned; that respondents, who are those who claim to have been elected at said pretended election, and those who claim to have been appointed in the place of those who resigned, claim to be the officers of said pretended corporation of the city of Del Rio, and are assuming and exercising the powers and functions conferred by law upon officers of a legally incorporated town or city, and are unlawfully and wrongfully claiming to act for the inhabitants of the territory above described as their officers and of said pretended incorporated city of Del Rio.

The information closes with a prayer that said pretended incorporation of said city of Del Rio, with the boundaries and territory described, be declared null and void; that respondents, who are wrongfully pretending to act as officers of said pretended city, be ousted from said assumed and pretended offices and enjoined and restrained from exercising the functions and powers of such officers.

The respondents answered by a general denial and among other things the following: "These respondents say and aver that said application for incorporation was presented by the citizens and electors of the said town of Del Rio and said territory in good faith and with the bona fide intention to incorporate the said town of Del Rio and the territory described therein for town purposes in the manner required by law, and to include in said incorporated territory no more than authorized by law for a town containing over 5,000 population as contained in said territory. That the lands included in said territory are and were intended in good faith to be used for town purposes, and the same were suitable for and adapted to and can be and will be used and appropriated for town purposes in the immediate future."

The case was tried before a jury, who, after all the evidence was introduced, were peremptorily charged to return a verdict for the relators. From the judgment entered upon a verdict returned in obedience to such instruction, granting the relief prayed for, this appeal is prosecuted.

*Opinion.*—The first, second and third assignments of error are directed against the charge of the court, and will be considered together.

It is now too well settled in this State to require citation of authorities or discussion of the principle, that an issue of fact should not be taken from the jury, except in cases where there is no material conflict in the evidence, and where there is no room for different minds to draw different inferences from it; and that it is only where the state of the testimony is such that but one conclusion can be deduced from it by ordinary minds, that the question at issue becomes one of law, and the court is authorized to peremptorily instruct a verdict upon it.

It is provided by the acts of the 24 Leg., p. 17, "That no city or town in this State shall be hereafter incorporated under the provisions of the

general charter for cities and towns contained in title 17 of the Revised Civil Statutes of this State with a superficial area of more than two square miles when such town or city has less than two thousand inhabitants, nor more than four square miles when such a city or town has more than ·two thousand and less than five thousand inhabitants, nor more than nine square miles when such city or town has more than five and less than ten thousand inhabitants." The reference to title 17 in this Act is evidently intended for title 18 of Revised Statutes, for the subject of title 17 is "Change of Name," no reference being made to "Cities and Towns," which is the subject of title 18.

By the Act of the 25 Leg., p. 193, which provides the method of incorporating towns and villages containing more than 500 and less than 10,000 inhabitants, it is enacted that the boundaries of the town or village shall include therein no territory "except that which is intended to be used for strictly town purposes." It is said by the Supreme Court in The State of Texas v. Hoard, 94 Texas, 529, that this provision "was intended to embody in the State the rule expressed in Ewing v. State, 81 Texas, 172, and State v. Eidson, 76 Texas, 302, forbidding the people of a town or village to embrace for taxing purposes lands not intended to be divided into lots and occupied for town purposes."

While the act in which this restriction appears makes no reference to the Act of the Twenty-fourth Legislature above referred to, and does not purport to amend any article of the Revised Statutes, but to define the territory and provide for establishing the boundaries of cities and towns in this State, and to validate the incorporation of any city or town theretofore incorporated in this State in certain cases, it is treated and considered by counsel for appellants and appellees as an amendment of it, and it will therefore be so considered by us in disposing of this appeal. If it is not so considered, it may be that the effect of the last Act is to repeal the former, or that the former is unaffected by the latter and subject to the rule announced in Ewing and Eidson cases above referred to. In either event the effect would be practically the same as though one act was an amendment of the other.

The question to be determined then, is there embraced in the superifical area of the nine square miles included in the boundaries sought to be incorporated, any territory except that which is intended to be used for strictly town purposes? The statute makes this a question of fact (State v. Hoard, supra) to be decided in the trial court as fact in other cases. (State v. Merchant, 85 S. W. Rep., 483.)

It is evident that a collection of inhabited houses occupied by a population of not less than five nor more than ten thousand can not (allowing for streets and alleys), if standing in such close proximity as to come within the ordinary meaning of a town or city, cover an area of nine square miles. And yet, the Legislature has expressly authorized the incorporation of a town or city, having such population, with that area of territory. Why, then, the proviso—"including therein no territory except that which is intended to be used for strictly town purposes?" For if the *intention* "to use for strictly town purposes" relates to the actual use at the time or immediately after the incorporation, it is apparent that a town with a population between five and ten thousand can not incorporate a superficial area of nine square miles. In other

words, if the intention of present or immediate future use of all the area for strictly town purposes were essential to the validity of the corporation, nine square miles could not be included in it, the effect of the proviso being to render the incorporation of that area into a town or city absolutely void.

In the case of State v. Town of Baird, 79 Texas, 63, it is said: "It may not always be practicable to incorporate a town without including within its limits some territory devoted purely to pastoral or agricultural pursuits. Something may be allowed for prospective expansion." May not the prospective expansion of a town be taken into consideration in determining the intention of the electors at the time of incorporation as to what area of territory is to be used strictly for town purposes? We think that the above quotation from the Supreme Court, as well as public policy founded upon ordinary experience and observation, requires an affirmative answer to the question.

The question of what territory shall be included within the boundary of towns or cities has been a vexed one a long time. It was a dispute, which arose in laying off the boundaries of the city of Rome over territory where there was no aggregation of houses, which was settled by its founder, Romulus, killing his twin brother Remus, who had suckled the same wolf with him while she was prowling around over the seven hills, which afterwards became the throne of beauty upon which that proud city sat and ruled the world.

Who, except a jury, when the prospective expansion of a Texas City is taken into consideration, can tell the extent of territory, not exceeding the limit prescribed by statute, intended by the incorporators of a prosperous and growing city to be used for strictly town purposes? Upon the ground, where, within the memory of man yet recent, in a little town, a panther lay down, stands a splendid edifice from which the judges of a Court of Civil Appeals, which sits there, can look out upon an "aggregation of inhabited houses" extending to the horizon, now composing a city which looks upon a sister town as though it were a bad place in the road. Who can tell what Ft. Worth, or any of our great cities, would have been had its expansive powers been curbed by a proceeding in the nature of a quo warranto, because it embraced within its corporate limits many square miles of uninhabited territory? The intention of the incorporators that that territory should be used for strictly town purposes has, in that city as in many cities of Texas, been made manifest and fulfilled.

Can it be said as a matter of law, when the evidence is looked to in the case under consideration, that there is included within the area, declared by the county judge of Val Verde County to be incorporated as the city of Del Rio, any territory except that which is intended to be used for strictly town purposes? If it can, then the judgment should be affirmed, if not, it should be reversed and the cause remanded and the question submitted to the determination of a jury. Any substantial doubt as to the question should determine it in favor of the appellants. For primarily all questions of fact are for the jury; and without it appears, without doubt, that what would ordinarily be a question of fact has, from the state of the evidence, become a question of law, a

court can not deprive a party of his constitutional right of trial by jury by deciding such question.

The evidence shows that at the date of the election to incorporate the city of Del Rio it was a town of about 7,000 inhabitants; that it has increased in population since that time; that it has four public schools, a private school maintained by the Sisters of Charity, and that the scholastic census increases about five percent per annum; that it has two banks, four hotels, and a number of small rooming houses; that there is one railroad there and that it is reasonably anticipated that another will be built there in the near future; that prior to and at the time of the election for incorporation there were some expectations among the citizens of the town, and effort on their part in that direction, to secure a large cotton mill there which was expected to employ 250 hands.

It was shown that the town was growing rapidly in wealth and population—having multiplied its population by six since 1895, and doubled it in the last five years. Though the evidence may be regarded as undisputed that only an area of 1,100 acres of the territory incorporated is covered by residences or business houses, and that there are about 4,546 acres, of which about 2,000 acres are arable and 2,500 acres are grazing lands, all of which, however, is capable of being adapted to town purposes, much of which is platted into blocks and streets, we are unable to say as a matter of law that all of it was not intended by the incorporators to be used for strictly town purposes. For, so long as the statutory limits are not exceeded, it is proper to make allowance for future growth and expansion, by so embracing territory as to insure symmetry of proportion, uniformity and continuity of blocks and streets, ample room for parks and pleasure grounds, room for public buildings, for schoolhouses and play grounds and all the accommodations and conveniences of a modern city for the health, prosperity, enjoyment and pleasure of its inhabitants. It can not be said as a matter of law of a growing, prosperous, thriving, humming town that it includes more territory than is intended to be used for strictly town purposes. All these things should be taken into consideration in incorporating such a town; for if it is not done before it expands into a real, sure-enough city, it will be almost impossible, without great expense and inconvenience, to then incorporate territory so as to insure them. Therefore, we conclude from the evidence before us that the court erred in peremptorily instructing a verdict for the relators, and that an issue of fact was presented which should have been submitted for the determination of the jury.

As this conclusion will require a reversal of the judgment, it will be necessary for us to consider the remaining assignments which complain of the exclusion of certain testimony and the admission of some other in evidence.

. The fourth complains that the court erred in not allowing respondents to read in evidence the original deeds to Moore to the property in the Casanelli subdivision, showing that in Moore's purchase of said property he did not buy the streets, but bought with reference to previous subdivisions of the same into streets and lots.

These deeds were offered, it was stated by appellants' counsel, in evidence for the purpose only of showing the fact that Moore did not purchase the streets in the Casanelli division, but that he only bought the

property, in said division with reference to the divided lots, blocks and streets. In our opinion the fact sought to be shown by the instrument offered in evidence was wholly irrelevant to the issue in the case. Moore was not a party to the suit; and if he were, it would be difficult to perceive the relevancy of such testimony. It was shown by the maps and plats of the division of the survey that it had been laid off into blocks and streets, this fact alone was relevant to the issue and was shown without the deeds.

The sixth assignment of error is directed against the action of the court in admitting in evidence over appellants' objection an ordinance passed by the city council on the 8th day of August, 1905, whereby the council undertook to reduce the boundaries of the city. We hardly think the purported ordinance was admissible in evidence. If the city was incorporated it was beyond the scope of authority of its council to pass any such ordinance. If it was not incorporated, there was no city council. The issue to be determined was whether the city had been properly incorporated, and the purported ordinance could throw no light whatever upon the question at issue. This also disposes of the sixth assignment of error which complains of the court's refusing, on motion of appellants' counsel, to exclude the ordinance in question from the jury after it had been admitted in evidence. For a like reason, the minutes of the council showing the grant of certain franchises were improperly admitted in evidence.

We do not think the information or petition obnoxious to either of the exceptions, which it is claimed in the ninth and tenth assignments of error the court erred in overruling.

For reason of the error indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Chief Justice James did not sit in this case.