[No. 3875.]

## FAGAN v. TROUTMAN, ADMINISTRATRIX.

1. TRIAL—*Directing the Verdict.* Where the evidence leaves the facts in any substantial degree doubtful, or fair-minded men might reach different conclusions therefrom, the issue must be left to the jury. So, even though there be no conflict in the evidence, if the result depends upon what inferences fair and reasonable men may draw therefrom.

2. GIFT—*Negotiable Paper—Endorsement,* is not necessary, as matter of law, to sustain a gift of negotiable paper, either *inter vivos* or *causa mortis.* The absence of an endorsement is matter of evidence to be considered with more suspicion in the case of an alleged gift *inter vivos* than in one *causa mortis.*

*Error to Denver District Court.* Hon. H. C. Riddle, Judge.

Mr. John R. Smith and Mr. H. B. Woods, for plaintiff in error.

Mr. Edwin H. Park, for defendant in error.

Hurlbut, J., delivered the opinion of the court.

This case, by agreement, was consolidated for argument with case No. 3704, *Nellie Fagan v. Susie Troutman, Admrx., et al.,* decided at this term of the court. Both cases involve proceedings concerning the same estate. The latter concerns title to real property, while the one at bar relates to personal property. In both, the real dispute concerns the right or interest of Nellie Fagan (plaintiff in error) in the property or estate of James Davenport, deceased. The evidence and testimony in both cases are closely related, and a number of the witnesses testified at both trials. In the case at bar, judgment was rendered in favor of plaintiff (defendant in error), from which this appeal was prosecuted.

By the pleadings it appears that plaintiff, as administratrix of the estate of James Davenport, deceased, brought action May 19, 1909, against defendant to secure possession of four certificates of deposit of the First National Bank of Denver, for various amounts aggregating $1,500; that two of such certificates, for $500 each, were issued October 9, 1908, another for $200 on January 29, 1909, and the remaining one March 15, 1909, for $300, all issued to the order of said James Davenport. The answer pleaded that defendant (stepdaughter of deceased) was in possession of said certificates at the time suit was brought, and claimed to be the owner and entitled to the possession of the same, basing such claim, first, upon an alleged gift *inter vivos* to her by deceased, second, upon an existing trust in her favor in said certificates. It also

admitted the issuing of the certificates, their dates and amounts, that Davenport was the payee therein, and that they had not been indorsed by him, but denied that Davenport had any title to the same at the time of his death. Both of said claims were controverted by plaintiff. These claims by defendant were the controlling and decisive issues for trial in the district court. The evidence tended to show that some months prior to his death, Davenport delivered the certificates in question to defendant in the presence of her husband, accompanied by a statement that they were hers, and by an injunction to keep them and take care of them and she would always have something. The defendant was not permitted to testify in corroboration of her husband, but if this sole living witness to this transaction, whose testimony was received, be credited, Davenport gave the certificates to defendant, saying, in substance, "that they were hers; for her to take good care of them; that she would always have something; and, in case anything happened to him, they belonged to her." The evidence also showed that from time to time after such delivery Davenport would come to defendant and temporarily obtain the certificates, or some of them, from her, and renew them at the bank. with additional interest, or return others in their places; that defendant retained possession of the certificates until the death of Davenport, and until suit was brought, that the certificates were never indorsed by deceased; that defendant, from the time of her infancy, lived with Davenport, until her marriage in 1907, and was treated by him as his own child, and she treated him in all respects as a father, and while such member of his family she rendered services and performed household duties for the benefit of deceased and members of the family generally. The evidence fails to show any specific or special contract between defendant and deceased for compensation for such work and services, nor is it shown

that defendant in any way was to pay deceased for her care and support during such time. It is further disclosed by the record that a jury was impaneled and sworn to try the issues; that at the beginning of the trial the lower court held that the burden of proof was upon the defendant by reason of the allegations in the answer, and also ruled the defendant might have the opening and closing; that after defendant's evidence was in and she rested her case, plaintiff, by her attorney, asked for a directed verdict in favor of plaintiff; whereupon the jury was excused from the courtroom, and it does not appear to have been subsequently reassembled. After some discussion between counsel, the court found the issues in favor of plaintiff, and rendered its decree accordingly.

It is strongly contended by appellant that the court's action in discharging the jury and passing upon the issues was a clear denial of her constitutional right to have the jury decide the issues by a verdict, and she particularly contends that the question as to whether or not there had been an absolute gift to her of the certificates of deposit by Davenport during his lifetime was, under the evidence adduced upon that point, clearly one for the jury to pass upon, as the evidence, both direct and upon cross-examination, showing the conditions, circumstances and statements of the alleged delivery thereof by Davenport, was evidence upon which honest men might reasonably differ as to the real intention of Davenport when he delivered the certificates to defendant. This court is of the opinion that appellant's last objection to the action of the court, as just detailed, is well taken. Many authorities of repute have been submitted by both parties concerning the right of a trial court to withdraw a case from a jury under circumstances similar to those appearing at the trial in the instant case. It would be difficult indeed to attempt to harmonize all of the authorities cited. We are satisfied that there is abundant credible

authority to sustain the conclusions we have reached. As we read the record, the controlling issue in this case is, was there a valid and complete gift of the certificates of deposit by Davenport during his lifetime to defendant? If we assume the affirmative, judgment would necessarily follow for defendant; if the negative, judgment would as surely go against her. There was considerable direct and cross-examination at the trial upon this issue. If all of the evidence appearing in the record, concerning Davenport's feeling and statements toward and concerning defendant, be considered in connection with that part of the evidence more particularly detailing what was said and done at the very time the certificates were delivered by Davenport to the defendant, it would seem to present an issue entirely proper and necessary to be passed upon by the jury. It is the contention of defendant that this delivery was intended as a gift *in praesenti,* and that the language used and other circumstances so show, while plaintiff insists that the delivery to the defendant was for safekeeping, as Davenport's depository only, and to be regarded as a gift *in futuro* in the event and at the time of his death.

The record indicates that the witness Jack-Fagan, husband of defendant, was an honest witness, and, in giving his testimony, desired only to state in a plain, straightforward way all he knew concerning the matters about which he was interrogated. He was the only one present with Davenport and defendant at the time the certificates of deposit are alleged to have been given and presented to defendant by Davenport, and his evidence upon that point is all that appears in the record. A careful reading of the evidence upon this point fails to disclose that Davenport, at the time of delivery of the certificates, used any words clearly attaching a condition precedent to the passing of title to defendant. The phrase, "if anything happens to me, or I am hurt on a

building, they are yours,'' may or may not have been intended by the donor to be taken as a condition precedent to the gift. It may have only been intended by him as explaining to her that whatever might happen to him in the future she would still have something of her own. On the other hand, he may have intended it to be an absolute condition to the passing of title in the certificates to her, and that he did not intend the title to pass unless death or some serious injury should overtake him. We hardly think a court would be justified in saying under this evidence, as a matter of law, that no gift to the defendant was proven. We rather think it was a question upon which honest men might differ, considering all of the circumstances of the delivery, as to whether or not the donor intended it to be an absolute gift. The fact of absolute or conditional gift was a live issue in the case, and there was a fair doubt as to how or in whose favor the issue should be resolved. Certainly a jury of practical men, listening to the testimony, observing the actions and deportment of the witnesses upon the stand, and weighing all the evidence upon the point in issue, were in a position, under proper instructions from the court, to decide this important issue. We think this case falls within that of *In re Shell's Estate,* 28 Colo., 167, 63 Pac., 413, 53 L. R. A., 387, 89 Am. St., 181, wherein the supreme court, in passing upon the right of one of the parties to a directed verdict of the jury, used this language:

"It is true that, if the question depends upon inferences to be drawn from a variety of facts and circumstances, in the consideration of which there is room for a substantial difference of opinion between intelligent, upright and reasonable men, then the question should be submitted to the jury under appropriate instructions, *even though there be no conflict in the testimony.*" [Italics ours.]

To the same effect is *Colo. & S. Ry. Co. v. Lauter,* 21 Colo. App., 101, 121 Pac., 137, wherein our late lamented associate, Judge Walling, used this language:

"Therefore, when the facts, or the inferences to be drawn therefrom are in any substantial degree doubtful, or fair-minded men might reach different conclusions from the facts, the only proper rule is to submit the question to the jury for determination."

To the same effect: *Ladd et al. v. Williams,* 104 Mo. App., 390, 79 S. W., 511; *Merritt v. State,* 42 Tex. Civ. App., 495, 94 S. W., 372; *Gansberg v. Sagemohl,* 73 N. Y. S., 984, 67 App. Div., 554. The list might be extended, but we deem it unnecessary. We are well aware of what appears to be the settled rule that *nisi prius* courts have the power, and it really becomes their duty in proper cases, to direct the verdict of the jury. For instance, where there is no evidence whatever to support an issue contended for by a party to an action; or where all the evidence taken in support of such issue shows as a matter of law it cannot be sustained, etc. But it is not within the province of a trial judge to pass upon the probative force of evidence and take the case from the jury, when, as above stated, a proper decision depends upon inferences in the consideration of which there is room for a substantial difference of opinion between intelligent, upright and reasonable men. In all such cases the question should be submitted to the jury under proper instructions, even if there be no conflict in the testimony. This should be and probably is the rule in all civil cases, but its applicability applies with unusual force in this case. The trial judge thought that the evidence conclusively showed that no absolute gift of the certificate had taken place. In this respect we are at variance with his conclusions. We think the evidence taken as a whole generated a doubt upon that issue which the jury should have resolved.

We do not think the defendant's case was prejudiced in any manner by the evidence which showed that after the delivery of the certificates to defendant Davenport from time to time obtained them from her temporarily for the purpose of adding the interest or otherwise increasing the amount represented by them. In fact, it might be considered by the jury a circumstance tending to establish the *bona fides* of the gift. There is no evidence whatever that Davenport ever took back or received from defendant the money, or any part thereof, represented by said certificates. This fact, at least, is one of the circumstances of the case to be considered with all other circumstances and facts disclosed at the trial.

It is admitted that none of the certificates of deposit were indorsed. The weight of authority seems to establish the rule almost beyond controversy that the indorsement of an instrument of the character we are considering is not necessary as a matter of law to sustain a gift *inter vivos* or one *causa mortis*. The absence of the indorsement is, however, a proper matter for evidence, and might be considered by a jury, in case of a gift *inter vivos,* with more suspicion than in one *causa mortis*.

There are some other assignments of error which have been ably presented by counsel for both parties, but as the case must be reversed for the reasons above given, we deem it unnecessary to further extend this opinion.

<em>Reversed and Remanded.</em>