## Moyer's Estate.

Argued December 4, 1940; reargued April 16, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*George T. Hambright* and *John E. Malone,* for appellant.

*Harris C. Arnold,* of *Arnold & Bricker,* with him *Louis S. May,* for appellees.

OPINION BY MR. JUSTICE PATTERSON, April 21, 1941:
H. P. Wisegarver, executor of the estate of Nathaniel Moyer, deceased, petitioned the court below for a citation directing Mabel Moyer, appellant, to turn over to the estate certain assets alleged to have been the property of the testator and in his possession at the time of his death, including a certificate of deposit, in the amount of $8,098.35, issued to the testator by the Keystone National Bank of Manheim, Pennsylvania. Appellant filed an answer averring that the certificate of deposit, the only asset mentioned in the petition with which we are here concerned, was her property and not the property of the testator and that it was not in his possession at the time of his death. After hearing upon the petition and answer the court held, without submitting the issue thus raised to a jury, that the certificate was an asset of the estate and directed that it be delivered over to the executor. Exceptions filed by appellant were dismissed by the court en banc and this appeal followed.

Nathaniel Moyer died testate on December 11, 1937, a resident of Ralpho Township, Lancaster County. He was a childless widower, nearly eighty-two years of age, and for some time before his death had been confined to his home, suffering from dropsy and arteriosclerosis.

Edith Bours, a foster daughter, and her husband lived with testator for a year and a half prior to his death and appellant, who was testator's niece and a trained nurse, went to live with him on November 3, 1937, nursing him until his death. On November 22, 1937, testator executed and acknowledged a power of attorney conferring upon appellant broad powers to act for him in affairs of business and to manage and dispose of his money and personal property. Being unable to affix his name to this document, testator signed it with his mark, duly attested, and it remained in effect until his death. Prior to the execution of the power of attorney, the certificate of deposit, which was testator's principal asset, was in the custody of Edith Bours who testified that "a few days" thereafter she surrendered it to appellant. After testator's death it was found in appellant's possession, unendorsed.

In support of the averments of her answer denying that the certificate was owned by testator at the time of his death, appellant introduced evidence to show a gift *causa mortis* of the certificate to her on November 25, 1937. An aunt and a cousin of appellant testified that on this date they came to testator's home, at his request, and were present in his room when the alleged gift was made. They stated that he instructed appellant to go into another room and procure the certificate, which she did. After examining it, testator handed it to her, saying: "Mabel take this, this is yours". The witnesses testified that appellant seemed "stunned" and hesitant, but accepted when testator repeated his insistence. The aunt inquired whether testator intended to make a gift to appellant and he replied that he did. Another cousin of appellant, who was not present when the certificate was delivered, stated that testator subsequently informed her of the gift and said that he was "ready to die". In rebuttal, Edith Bours testified that the certificate was still in her custody on November 25, 1937, and that she did not surrender it to appellant

until "either the 30th of November or first of December". The executor also presented evidence to show that on the day the alleged gift was made the testator was in a weakened physical and mental condition.

The court below found, as a fact, that appellant stood in a confidential relation to the testator at the time of the alleged gift; that her evidence was insufficient to overcome the presumption that her possession of the instrument was that of an agent for the testator under the power of attorney; and that it failed to establish a valid gift. As to appellant's objection that the orphans' court was without jurisdiction to try the question of title to the certificate, it was held that the evidence presented no "substantial dispute" upon that issue.

The rules regarding the jurisdiction of the orphans' court to settle disputes concerning the title to personal property claimed for the estate of a decedent are well summarized in *Keyser's Est.*, 329 Pa. 514, where it is said, at 518: "(2) If the property was in the decedent's possession, *either actually or presumptively,* at the time of his death, or thereafter at any time came into the possession of his personal representative, as part of the estate for purposes of administration and ultimate distribution, the jurisdiction of the orphans' court attaches and it may decree or award the disposition thereof, *subject to the procedural rule next to be stated.* (3) If upon a hearing it so appears, *yet a substantial dispute as to title or ownership is shown to exist between the rival claimants,* the orphans' court has no power to try and determine this question, but may submit the issue to the court of common pleas for a trial by jury, under the power conferred by the Act of June 7, 1917, P. L. 363, sec. 21 (a) (20 PS sec. 2581) ; the verdict so found, where certified to the orphans' court, may then become the basis of a decree by that court settling the controversy. (4) If, however, the property in dispute was not in the decedent's possession at the time of his death,

and did not thereafter come into the hands of his personal representative, the orphans' court is without power to determine title or ownership disputed by a third party claiming the property as his own. In such case the executor or administrator must bring an action at law or in equity in the court of common pleas against the party in possession". See also *Cutler's Est.,* 225 Pa. 167; *Cooper's Est.,* 263 Pa. 37; *McGovern's Est.,* 322 Pa. 379; *Foulke's Est.,* 334 Pa. 186, 190; *Crisswell's Est.,* 334 Pa. 266; *Blaszcak's Est.,* 90 Pa. Superior Ct. 589. Admittedly the certificate of deposit was not in the actual possession of the testator at the time of his death, nor was it thereafter in the possession of his personal representative. Consequently, if the jurisdiction of the court below were to attach, even preliminarily, it could do so only upon the theory that the instrument was *presumptively* in the possession of the testator.

Whether the certificate was presumptively within the possession of testator was a jurisdictional fact within the power of the court below to determine: *Cutler's Est., Cooper's Est., Keyser's Est., Crisswell's Est.,* all supra. And, it appears that there was sufficient evidence to create, *prima facie,* such a presumption. The certificate of deposit had been in the possession of the testator until a few weeks before his death; it remained payable to his order and was never endorsed to the appellant; and it had not been presented to the bank for payment by appellant. Furthermore, appellant was, at the time of the alleged transfer to her, the holder of a broad power of attorney authorizing her to take into her custody the personal property of the testator. In *Keyser's Est.,* supra, it was said, at 522: "The agency relationship existing between decedent and appellant and his wife prior to the former's death was not denied, and its existence warranted a finding that appellant's possession of the certificates at his father's death, if such was the fact, was as agent only". Clearly the

court below was justified in concluding that it had jurisdiction, in the broad sense, over the subject matter of the controversy. But it is equally clear that, if a "substantial dispute" existed between the parties as to the ownership of the certificate, it had no power to go further and finally determine the question of title raised by appellant's averment of a gift *causa mortis*.

In *Crisswell's Est.*, supra, it is stated, at 270: "If the property is fairly to be regarded as having been in decedent's possession, either actually or presumptively, at the time of his death, but there is a substantial factual dispute as to ownership, *the orphans' court has no power, sitting as a fact-finding tribunal, to determine this question,* but may submit the issue for a trial by jury, and a verdict so found will properly constitute the basis of a decree by that court settling the controversy". See also *Keyser's Est.*, supra, at 519. The fact-finding power of the court is limited to a determination of whether a substantial dispute exists, and for this purpose it may hear evidence in support of the pleadings. In *Cutler's Est.*, supra, it was said, at 171: "If at testator's death the property is shown to have been in his possession, or if for any other reason it was presumptively his, a mere denial of his ownership unsupported will not oust the court of its jurisdiction, but the court may proceed with the investigation *so far as to inform itself whether the denial is made in good faith and a substantial dispute exists*". The submission of the case to a jury upon the disclosure of a substantial dispute of title is not, therefore, merely a matter of formal procedure, unrelated to the question of jurisdiction; it is a procedure pre-requisite to the final settlement of the issue of ownership, and unless and until it is taken, the orphans' court is without further jurisdiction in the case. Since the finding and conclusion that there is no substantial dispute, in good faith, between these parties, over the ownership of the certificate, is determinative of the power of the court

below to make the decree from which this appeal was taken, it is necessary to consider whether, upon the whole record, that determination is supported by the evidence and the law relating to the alleged gift *causa mortis*.

Assuming that, as the court below held, the evidence established a confidential relation between appellant and the testator, this would not, in itself, preclude the possibility of a valid gift by the testator to appellant; it would serve merely to place upon appellant a heavy burden of proof. As said in *Null's Estate*, 302 Pa. 64, 68: "When a confidential relation is established, the *presumption* is that the transaction, if of sufficient importance, is void and there is cast on the donee the burden of proving affirmatively a compliance with equitable requisites and thereby overcoming the presumption; he must affirmatively show that no deception was used and the act was the intelligent and understood act of the grantor, fair, conscientious and beyond the reach of suspicion". See also *McCown v. Fraser*, 327 Pa. 561, 564-65. To meet this burden, appellant called three witnesses who testified, in substance, that the testator voluntarily requested her to produce the certificate; that he examined it and knew what it was; that he delivered it manually to appellant, using words indicative of a gift to her; that she was surprised and "stunned" by his act; and that he expressly stated his intention to make a gift to her in contemplation of death. These witnesses offered their testimony without hesitation and with such clarity that the court below found it "too good to be true". If they were to be believed, their evidence was obviously sufficient to rebut the presumption that the gift was void. That the witnesses are related to appellant by marriage affects merely the weight of the evidence and their credibility. As the contradictory testimony of Edith Bours raised a sharp issue of fact and there is no evidence of bad faith on the part of appellant in claiming title to the

certificate, there was such a clear and substantial dis‧ pute between the parties as required the submission of the case to a jury.

It is urged, however, that even if appellant's three witnesses were believed their testimony would, nevertheless, be insufficient to create a substantial dispute as to title or ownership because the certificate of deposit was not endorsed. Prior to the Negotiable Instruments Law of May 16, 1901, P. L. 194, certificates of deposit were held in this state to be non-negotiable, and it was well settled that a valid gift could be effected without either endorsement or assignment in writing. See *Connell's Est.*, 282 Pa. 555, 560. In *McCabe's Est.*, 6 Pa. C. C. 42, where a gift *causa mortis* of such certificates without endorsement was held valid, the court said, at 47: "The argument that the certificates should have been endorsed fails entirely. An endorsement would have made them a gift inter vivos, and the donor would have parted with the proceeds entirely. As he gave them without endorsement, it left them subject to revocation by will or otherwise during his lifetime". Although certificates of deposit have been held to be negotiable instruments under the Act of 1901 *(Gordon v. Fifth Ave. Bank of Pittsburgh,* 308 Pa. 323; *Forrest v. Safety Bank & Tr. Co.,* 174 Fed. 345), no reason can be found in that Act to require a change in our rule regarding their transfer as gifts *causa mortis.* See *Shaffer v. Hoke,* 80 Pa. Superior Ct. 434.

It is true that the instrument in the present case was payable to the order of the testator, and that a negotiable instrument payable to the order of a specified person "is negotiated by the indorsement of the holder, completed by delivery": Act of 1901, section 30. But, we are here concerned solely with the question of *title* to the instrument and not with the question of whether appellant became a holder in due course, and this distinction is vital to an understanding of the problem. That one to whom an instrument payable to a specified person is delivered without endorsement may have title

thereto clearly appears from section 49 of the Act of 1901, which provides: "Where the holder of an instrument, payable to his order, transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferer had therein . . .." Although this section of the Act refers to transfers for value, there is no reason, as pointed out in Brannan on the Law of Negotiable Instruments (Beutel's 5th ed.), at 472, why the rule should not apply to gratuitous transfers. See also *Cosmopolitan Tr. Co. v. Leonard Watch Co.*, 249 Mass. 14, 143 N. E. 827. It is so applied in other jurisdictions where certificates of deposit are recognized to be negotiable instruments: See *Rinard v. Lasley*, 143 Ill. App. 450; *Bertolet v. Stoner*, 164 Ill. App. 605; *Merrill v. Merrill*, 187 Ill. App. 589; *Fagan v. Troutman*, 24 Colo. App. 473, 135 Pac. 122. In the last cited case it was stated: "The weight of authority seems to establish the rule almost beyond controversy that the indorsement of an instrument of the character we are considering is not necessary, as a matter of law, to sustain a gift inter vivos or one causa mortis. The absence of the indorsement is, however, a proper matter for evidence, and might be considered by a jury in case of a gift inter vivos, with more suspicion than in one causa mortis". See also *Anno.* 40 A. L. R. 508, 512-13, and cases there cited. In the present case, therefore, the absence of an endorsement upon the certificate of deposit would not be conclusive of an incomplete gift, but would merely be evidence to be considered by the jury with all of the other circumstances of the case in determining whether a gift *causa mortis* was effected as a matter of fact. In this connection it would be proper to consider whether the testator, at the time of the alleged transfer, was physically able to make such an endorsement. See *Westerlo v. DeWitt*, 36 N. Y. 340.

For the contention that indorsement of the certificate was required to constitute appellant the owner, reliance is placed upon *Cooper's Estate,* supra, wherein,

at 46-47, the following appears: "In every valid gift a present title must vest in the donee irrevocably. In the case of money on deposit or loaned out, the certificate of deposit or bill, note or bond may be delivered *properly endorsed* and it will confer on the donee an absolute title of the fund represented by it, but if there remains something for the donor to do before the title of the donee is complete, the donor may decline further performance and resume his own". This manifestly refers to gifts *inter vivos,* and the statement with regard to endorsement is made generally, and not with particular limitation to certificates of deposit. Nor does it purport to imply that there can be no valid gift of a certificate of deposit *without* endorsement. Furthermore, an examination of the facts of that case discloses how inapplicable it is to the situation now before us. There the decedent gave her niece certain certificates of deposit, saying: "Those are the certificates for you, as I intend fixing up my affairs", but immediately took back the instruments and restored them to their accustomed place in a drawer to which both she and her niece had access. Subsequently the niece, as agent for the decedent, took the certificates to the bank and collected the interest thereon, and new certificates were issued in the name of the decedent and were placed by her in the drawer where the old certificates had always been kept. They were found there upon her death, and passed into the possession of the executors of her estate, of which the niece was one. The only testimony to sustain the gift was that of the niece herself, whom the auditor found to be an incompetent witness. The opinion makes no mention whatever of the fact of endorsement or non-endorsement, and the real basis of the decision is set forth, at page 47, as follows: "The appellant's case as exhibited by herself is utterly lacking in these requirements. Not only does it fail to show such *delivery of* the certificates of deposit as the law requires in order to establish a valid gift, *but it shows a re-*

*tention of possession and ownership of them by the alleged donor down to her death"*. Clearly the decision in *Cooper's Estate* does not establish or purport to establish a rule requiring certificates of deposit to be endorsed in order to constitute a donee the owner thereof.

We are satisfied that the evidence established a substantial dispute, in good faith, as to the title to the certificate of deposit, and that the court below was without power to proceed to a final determination of the matter because of its failure to submit the issue to a jury in the common pleas, or to one impanelled by it under the Act of July 1, 1937, P. L. 2665. See *Plotts' Estate,* 335 Pa. 81.

The decree of the court below is reversed and the record is remitted for further proceedings in accordance with this opinion. Costs to abide the final decree.